Judge Marshall
delivered the Opinion of Hie Court.
This writ of error is prosecuted by McGowan and Hardwick, for the reversal of a judgment obtained against them by Crooks, in an action of trespass quart clausum fregit. The trial was had on the plea of liberum tenementum as to McGowan, and as to Hardwick, that he entered &c. under and by permission of McGowan.
The trespass complained of consisted of deadening and cutting down the timber on twenty acres of land, hot enclosed; and which was proved to be included within the patent of Thomas Swearingen, for five hundred acres, dated in December, 1785, under which McGowan claimed title, by deed from Andrew Swearingen, dated in September, 1806; and also within the "patent of Jacob Myers, for five hundred acres; the date of which was a matter of contest between the parties; and within the patent of J. C. Owings, for four hundred acres, dated in 1799; under the two last of which, the plaintiff claimed title — it being admitted, that he had acquired title under Owings’ patent, in 1817, and under that of Myers, at some period not fixed; either by admission or proof,
The copy of Myers’ patent, read by the plaintiff, bears, date the 12th day of May, 1785, “in the tenth year of the Commonwealth,” and is properly certified from the Register’s office. A copy of the same patent, certified in the same manner, and by the same person, was read by the defendants, dated on the 12th day of May, 1786, and in the tenth year of the Commonwealth.
The defendants also read a certified copy of the certificate of survey on which the patent of Myers issued, *66 showing that the survey was made in 1784. And for the purpose of fortifying the copy of the patent read by them, as being the true copy in point of date, offered to read an endorsement on the copy of the survey, stating that the grant had issued on the 12th of May, 1786. But the reading of it was objected to by the plaintiff, and refused by the Court; The propriety of which refusal presents the first question to be considered.
Instructions.
Two papers being produced, not alike, but both purporting to be true copies of the same patent—whether the one, or the other, is the true copy, is a question of fact.
The period from which Virginia dates her existence as a State, is matter of law, as well as of fact.
A paper certified as a true copy of a patent, bearing date in 1785, and the tenth year of the commonwealth (which was 1786,) may agree with the original; or one bearing date in 1786, and the tenth year of the com’th (corresponding dates,) may be a true copy: which is so, is a question of fact; a jury may be justified in finding in favor of the former, but it is not matter of law, as to which the court can give them instructions.
*66 The certificate of the Register, verifying the copy of the original survey, does not appear to embrace this endorsement on the copy; nor is it otherwise certified or proved to be a copy of any endorsement or memorandum attached to the original; nor does it appear by whom it was made on the copy read. For these reasons which seem to have been given by the Circuit Court, we think the endorsement was not evidence and wag properly rejected.
After the introduction of evidence by each party relating to the possession of the land in controversy, and after several instructions were given on motion of the plaintiff — the defendants moved the Court to instruct the jury, that the copy of Myers’ patent read by them was the true copy; and also, that the patent of Swearingen was the eldest. But the Court refused the instructions; and this refusal is urged as a ground of reversal.
It seems to us, however, that the question, which of these copies is the true copy of the original patent, is one of fact, and not of mere law. The period from which the Commonwealth of Virginia dates her existence must, indeed, be considered as a matter of law, as well as of fact; and the Court might properly have been called on to instruct the jury on that point. But this does not settle the question of verity between the two copies, each of which is certified to be a true exemplification of the original. The patent, like other public official papers, is dated, not only with reference to the year of our Lord, but also with reference to the year of the Commonwealth. The copy read by the plaintiff, was inconsistent in its reference to these two epochs, in as much as the 12th day of May, 1785, was not in the 10th, *67 but in the 9th, year of the Commonwealth. But, although the patent could not have issued on the 12th day of May, 1785, and in the 10th year of the Commonwealth, it may, whenever issued, have borne that date on its face. And the certified copy, read by the plaintiff, conduced to prove that it did bear that date. It may be deemed more probable that the inconsistency existed by mistake in the copy only; and this probability may be increased by the production of another certified copy showing no such inconsistency. But all that can be said between those two official copies, is that the weight of probabilities is in favor of the verity of that one which is consistent with itself. On this ground the jury might have been justified in finding the copy read by the defendants, to be the true one; the Court could not instruct them, as a matter of law, that it was so.
A patent takes effect at the time it is issued, or executed—of which the date is evidence.
A patent being produced having two different irreconcilable dates, held, that, the ambiguity, unexplained, must.be taken most against the patent—the latest date as the true one, and so the patent must yield to another conflicting patent issued between the two dates.
The other instruction above stated, viz: “that the patent of Swearingen is the eldest,” stands upon different grounds. It does not necessarily involve a comparison of the two copies. For admitting the copy read by the plaintiff to be the true one, or supposing it to have been the only one read on the trial, or that the plaintiff had produced the original itself, dated as the copy represents it to be: then it would appear, that the patent of Myers, under which the plaintiff claimed, bears a date which cannot be true taken altogether, as the 12th day of May, 1785, cannot be in the 10th year of the Commonwealth. The patent takes effect from the time it was issued or executed, and the date is inserted as evidence of that time. But here the date would show that the same patent was issued on the 12th of May, 1785, and also on the 12th day of May, in the 10th year of the Commonwealth. These two. periods, are both inserted by command of the law, and are intended to fix the date of the same identical act. But being twelve months apart, they cannot both be true. Each disproves the other, and we do not perceive any stable ground upon which either a Court or jury could undertake, upon the face of the patent] alone, to determine at which of these periods it. actually emanated. The most that can be *68 said is, that it was issued on one of the two days on which it purports to have been issued. This ambiguity must construed most strongly against the patent, And when coming in competition with a patent of intermediate date between those two days, we think, in the absence of all other evidence but that arising on the face of the patent itself, it must, as a matter of law, be considered as having its operation and effect only from the last named day; and as being, therefore, younger than the patent of intermediate date. This is substantially the proposition contained in the instruction now under consideration, and we think the Court erred in overruling it.
When there are interfering grants and the junior patentee has made the first entry within the interference, & holds possession of it, if the elder patentee, enters up on it, within 20 years, for the purpose of taking possession, such entry stops the running of the statute of limitations against him and may vest him with the entire possession; it will, at least, vest him with the possession of land and, though the possession continued, it will save his right of entry for the 20 years from the time his possession ceased.
The patent of Swearingen being, as the proof now stands, the oldest upon the land in contest, the defendants, holding by deed under that patent, must be considered as having established their justification—unless, by reason of the length of possession under one or both of junior patents, the right of entry under that of Swearingen was lost. To this point, several of the instructions and great part of the parol evidence were directed. But as for the error, just noticed, the judgment must be reversed, it will be sufficient to advert in general terms to the principles applicable to the case, and to such of the instructions as seem to be in conflict with them.
The general doctrine relating to the effect of an entry upon land, by the elder or junior patentee, within or without the interference, and of a prior and subsequent entry by one or the other, have been so often declared by this Court, as not to require a reannunciation of it, in this case. One of the well established principles on the subject, is, that where the junior patentee has made the first entry within the interference, and holds possession of it, if the elder patentee enter upon it within twenty years, for the purpose of taking possession, such entry stops the running of the statute of limitations against him, and may vest him with the entire possession. Hord vs. Bodley, 5 Litt. 88. Such an entry certainly gains the possession of the unenclosed land, and though it should not be continued, would operate to save the right *69 of the elder patentee for twenty years from the time of its removal or cessation.
A junior patentee (or one holding his title) enters upon an interference; but, before he has held it 20 years, an elder patentee (or one holding his title intending to take possession of the interference, enters, and settles a tenant upon it: this gives him (the holder of the elder the an actual possession of all the unenclosed land, at least; so that trespass cannot be maintained against him, for acts done to the land, while the tenant remains on it. And, under circumstances, instructions that, if the plt'f (holder of the junior title) had had 20 years continued possession within the interference, before the trespass was committed, the law is for him, cannot be sustained.
In this case, the evidence conduced to -prove that, some year or two before the pommission of the acts complained of as a trespass, and before the plaintiff had had twenty years uninterrupted possession of the land, the defendant McGowan, had settled the defendant Hardwick, as his tenant, within the interference, and that the tenant still resided there when the alleged trespass was committed. Assuming that this entry was made for the purpose of taking possession, it not only preserved the right of McGowan from being lost by the adverse possesion of Crooks, and therefore justified a subsequent entry, within twenty years after the first entry, but it gave him the actual possession (at least of the unenclosed land) so that the cutting and deadening of timber upon it, at any time afterward, while Hardwick remained within the interference, could not be a trespass upon Crooks.
It follows, from these positions, that those instructions (of which there were‘several) which contained the proposition that, if the plaintiff and those under whom he claimed had had twenty years continued possession, within the interference, before the trespass was committed, the law is for the plaintiff — must be considered either as deciding, upon the evidence, that the defendants had made no entry within the interference, for the purpose of taking possession, before the alleged trespass, and before the plaintiff’s possession had continued twenty years — which the Court had no right to decide; or, as deciding that such entry and possession did not stop the running of the statute, and had no effect in favor of the defendants title, which is contrary to the well established law o.n the subject. In either aspect, the instructions were erroneous.
With regard to other instructions given and refused, some of them are predicated upon, and give importance to facts in relation to which there is no proof in the record, and some of them assume that the patent of Myers is older than that of Swearingen, or may be found to be so by the jury. None such should have been given. *70 But without noticing these more particularly, the judgment for the errors before designated, is reversed, and the cause remanded, that a new trial may be had, on principles not inconsistent with this opinion.