## Illinois Central Railroad Company, et al. v. Taylor, et al.

(Decided April 16, 1915.)

### Appeal from Daviess Circuit Court.

1. Land—Controversy Over Ownership—Title.—Where parties are in controversy over the ownership of land, and all claim title through a common vendor, it is not necessary to consider the chain of title, further back, than to the common stem, in determining the ownership.

2. Land—Extent of Possession.—Where one, having title is in possession under an elder grant, claiming ownership to the extent of his boundaries, he is in the possession to the extent of the boundaries of his grant, unless one claiming under a junior grant has actual occupancy of the portion of the lands, which are covered by both grants.

3. Land—Possession.—Where one, having title, is in actual possession of some portion of his land under his deed, claiming title to all of his land, he is in actual possession to the extent of his deed, of all of the lands embraced in the deed, which are not in the actual, adverse possession of another.

4. Deeds—Conveyance of Right of Way.—A deed conveying to a railroad company a "right of way for railroad purposes, as now established over the land," vests title in the railroad company, in so much of the land, as was at the date of the deed, occupied by the tracks, and switches of the railroad company, and by the buildings owned and used by the railroad company, in connection with the operation of the railroad, and for the conduct of its business.

MILLER, SANDIDGE & MALIN, R. V. FLETCHER and TRABUE, DOOLAN & COX for appellants.

W. T. ELLIS and O. H. HAYNES for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This is a suit in the Circuit Court of Daviess County by the appellees, J. G. Taylor and James J. Sweeney, against the appellants, Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company. The appellees, whom we will call the plaintiffs, by their petition, claimed to be the legal owners and in the actual possession of a lot in the city of Owensboro, containing 4.51 acres, to which they claimed title by a deed to them by J. A. Lyddane, the assignee of M. V. Monarch, and, also, by continuous, uninterrupted, and adverse possession of the lot for the statutory period

necessary to vest in them the legal title. They claimed to own all of this lot, except a strip through it which was embraced in the right of way of what was formerly the Owensboro, Falls of Rough & Green River R. R. Co., which is now owned by the Chicago, St. Louis & New Orleans R. R. Co., and held under a lease by the Illinois Central R. R. Co. In the petition the width of this right of way is stated to be —— feet. The appellants, whom we will hereafter call the defendants, by answer, denied the ownership and possession of this lot by the plaintiffs, and set up claim to ownership of it, by themselves. They claimed title to it by adverse possession for the statutory period necessary to vest title in them, and by a conveyance to their vendor, the Owensboro, Falls of Rough & Green River R. R. Co., by M. V. Monarch, one of the former owners of the lot, and, also, they claimed to be the owners of it because, as they alleged, that the property was purchased by J. W. M. Field, a former president of the Owensboro, Falls of Rough & Green River R. R. Co., and that it was paid for with the money of the railroad company, but conveyed to Field, to be held by him in trust for the railroad company, and that he had conveyed it to Monarch, a succeeding president of the company, as a trustee, for the use and benefit of the railroad company, and alleged that the deed of conveyance from Field to Monarch showed that it was so held by Monarch, and that Monarch being one of the remote vendors of the plaintiffs, they had notice of the fact that Monarch held the naked title to the lot, in trust for the railroad company, which was the beneficial owner of it.

The foregoing issues were properly and aptly made by the pleadings in the case, and after the taking of considerable proof, the case was submitted for trial, and the court adjudged that the plaintiffs were the owners of all of the lot, except sixty-six feet in width, along the southern boundary of the lot, which the court adjudged was the right of way owned by the defendants as the vendees of the Owensboro, Falls of Rough & Green River R. R. Co. The title of the plaintiffs to all of the lot, except sixty-six feet in width mentioned, was quieted. To this judgment the defendants excepted, and appeal to this court. The plaintiffs, also, excepted to the judgment, because the court adjudged that the right of way owned by the defendants was sixty-six feet in width,

when, as they contended, it was only forty-five feet in width, and they have, also, taken from the judgment a cross-appeal to this court.

Each of the parties claim title to the lot through M. V. Monarch, J. W. M. Field, and P. J. Miller, as remote vendors, and we deem it unnecessary to further state the source of the title of either plaintiffs or defendants.

It seems that in the year 1889, J. W. M. Field, M. V. Monarch, and S. M. Deane were in some way associated together, and promoting the building of the Owensboro, Falls of Rough and Green River R. R. Co., and so far as the record shows, these parties were the actual builders of the railroad. For the purpose of acquiring the right of way for the road, it seems that J. W. M. Field purchased various tracts of land and town lots where the right of way could not otherwise be obtained, and these were conveyed to him as an individual. There is nothing in the evidence showing that he did not pay for these lands with his own means. In fact, so far as any proof upon that subject appears, he bought the lot in controversy, and paid for it with his own money. It is alleged in the answer that about 1892, he was the president of the road, but whether he was the president at the time of the purchase of the lot, in question, there is nothing to show. This lot was conveyed to him by P. J. Miller, on July 3rd, 1889, and the deed shows that it was conveyed to him in his individual capacity, and without any mention of any purpose for which it was conveyed, and without any mention of him as having any connection with the proposed railroad. On the 28th day of June, 1892, Field, as an individual, conveyed this lot to M. V. Monarch, as an individual. Although this deed indicates that this was one of the pieces of property purchased by J. W. M. Field for railroad purposes, there is nothing in the deed which indicates that the entire lot was to be used for that purpose. In fact, the conveyance by Field to Monarch as an individual, and not to him as president of the railroad company, nor to the railroad company itself, conduces to show that it was the intention of Field and Monarch to vest the title to this lot in Monarch personally, and not in the railroad company, nor to him as a trustee for the railroad company. If the railroad company was the real owner of this lot, and Monarch was a mere title holder, for the benefit of the railroad company and as a trustee for it,

without any explanation, we are unable to see, why the title should have been conveyed to him personally, and no mention made of the fact that the railroad company had any interest in it, nor that he was to hold it for the use and benefit of the railroad company. It seems that previous to this time the railroad had been constructed over this lot, and considering all of the evidence offered, our conclusion is, that it was intended that the railroad company should own the portion of it necessary for its purposes, and the remainder of the lot was intended to be the property of M. V. Monarch, if in fact he was not at that time the owner of the railroad, and all of its property. The testimony given by R. W. Slack, while not competent for the purpose of enlarging or diminishing the terms of the deed, by which Monarch received title to the lot, nor the deed by which he conveyed such portion of it, as he did convey, to the railroad company, the testimony is competent to determine whether he held the title to the lot in his own person, or as a trustee for the railroad company, and his testimony conclusively shows that he was the title holder of the lot himself, and not as a trustee for the railroad company, or any other beneficiary.

On the 5th day of July, 1892, Monarch executed a deed to the railroad company, by which he conveyed to the company the right of way for the railroad, and with reference to where it extended over the property in controversy, the deed uses the following language: "Also conveys the right of way for railroad purposes, as now established, over the land of P. J. Miller, as conveyed to said Field, by deed dated July 3rd, 1889."

On the 16th day of March, 1898, Monarch executed to J. A. Lyddane a deed of assignment for the benefit of his creditors, by which he conveyed to Lyddane all of his property, and at the same time, he filed a schedule of his assets, in which he included the lot in controversy, and described it as follows: "Also a strip of ground between the Hartford road and Murray's avenue, conveyed to J. W. M. Field by P. J. Miller, and conveyed by said Field to said Monarch, by deed of date June 28th, 1892. * * * Said strip being subject to a conveyance by said Monarch to the Owensboro, Falls of Rough & Green River R. R. Co., of the right of way for railroad purposes, as then established, over said land, by deed of date July 5th, 1892." The assignee, by proper

proceedings, and by an order of the Daviess County Court, on the 10th day of April, 1899, sold the lot, when the plaintiffs became the purchasers. The report of sale was confirmed on the 15th day of May, 1899, and on the 16th day of April, 1902, the assignee executed and delivered a deed to the plaintiffs for the land, subject to the rights of the railroad company, and its vendees and assigns, as expressed in the deed of date July 5th, 1892, from Monarch to the railroad company. It seems that the railroad company accepted the deed executed to it by Monarch for its right of way, on July 5th, 1892, and put it to record in the proper office. Thereafter, in a proceeding in the Federal Court, the railroad and its property was sold, and E. H. Harriman became the purchaser, and he conveyed it to the Chicago, St. Louis & New Orleans R. R. Co., who has since leased it to the Illinois Central R. R. Co. The deeds from the commissioner of the Federal Court to Harriman and from Harriman to the Chicago, St. Louis & New Orleans R. R. Co., are not in the record. It will be observed that both plaintiffs and defendants claim title under M. V. Monarch; the plaintiffs under the deed from Lyddane, assignee of M. V. Monarch, to them, dated April 16th, 1902; and the defendants under the deed from Monarch to the Owensboro, Falls of Rough & Green River R. R. Co., dated July 5th, 1892.

The deed from Monarch to the Owensboro, Falls of Rough & Green River R. R. Co., being prior in point of time to the date of the sale by the assignee to plaintiffs, must by its terms and application to the land, determine the respective rights of each of the parties in the land. After Monarch executed his deed to the railroad company, he nor his assignee, could by anything diminish, in quantity, the lands embraced in this deed. There is no evidence conducing to show, that after Monarch made the conveyance to the railroad company, that he ever had or held actual possession of any portion of the land embraced in that deed, claiming it as his own property, or adversely, and the plaintiffs were not claimants of the land for fifteen years before the bringing of their suit, and hence could not have title to any of the lands embraced in the deed from Monarch to the railroad company, by holding and claiming it adversely. The railroad company and its vendees having been in actual possession of the portion of the land conveyed to it by

Monarch ever since the execution of the deed to it, even if plaintiff's deed embraced some portion of the land embraced in the deed to the railroad company, the plaintiffs would not thereby acquire any title to such lap, unless they were in actual occupancy of the lap, by having it enclosed or having buildings upon it, claiming it as their own for the period of fifteen years continuously, although they may have been in the actual possession of the lands not embraced in the deed to the railroad company, and without the lap. The railroad company being in actual possession under its deed of a portion of the land, as a matter of law, it was at all times in actual possession to the extent of the boundaries of its deed, by construction, unless the plaintiffs were in actual occupancy within the boundary of the deed to the railroad company. The defendants can have no rights in the land, arising from adverse possession, beyond the boundaries of their deed, because, they have, from the evidence, had no actual possession beyond the boundaries of their deed, for the necessary time, under the statute, to vest title in them. While there is some evidence tending to show that the defendants had a round house, sand house, blacksmith shop, and a switch upon the land, outside of the portion now occupied by their tracks, all agree that no such houses have been there later than 1898 or 1899, which was only seven or eight years following the making of the deed to the railroad company by Monarch, and this time could not be added to the time which they occupied the lands, in this way, before the making of the deed, in order to make the occupancy for the statutory period, because, before the making of the deed, Monarch and his vendor owned all of the land, and had control and direction of the railroad company. Jones v. McCanley, 2 Dana, 15; Smith v. Mitchell, 1 Marshall, 208; Lillard v. McGee, 3 J. J. Mar., 552; Wilson v. Stivers, 4 Dana, 635; Gregory v. Ford, 5 B. M., 478; Trible v. Smith, 4 Bibb., 257; Chiles v. Jones, 7 Dana, 533; Gruhler v. Wheeler, 12 B. M., 183; Marshall v. McDaniel, 12 Bush. 381; Miller v. Humphries, 2 Mar., 448; Shrieve v. Summars, 1 Dana, 239; McGowan v. Crooks, 5 Dana, 69. It follows that neither party can claim title to any of the land, arising from a claim of adverse possession, except defendants could do so, of that portion now occupied by their tracks, but which all admit is embraced in the deed from Monarch.

To ascertain the rights of the parties, it is necessary to look to the deed from Monarch to Owensboro, Falls of Rough & Green River R. R. Co., of date, July 5th, 1892, and to determine its boundaries.

There is nothing latent about the meaning of the deed, which can be explained by parol evidence, except to demonstrate where ''the right of way was then established over the land.'' The deed itself shows that it was not the intention of Monarch to convey the entire lot, and when it was accepted by the vendee, it must be considered, that it did not understand, that the entire lot was conveyed. If it was intended by the deed to convey the entire lot, it would be puzzling to conclude why the language—''Also, conveys the right of way for railroad purposes, as now established over the land of P. J. Miller, as conveyed to Field, by deed, dated July 3rd, 1889,'' was used, instead of merely describing the entire lot. The expression, ''as conveyed to Field,'' does not mean that it was conveyed to the railroad company to the extent that it was conveyed to Field, and therefore the entire lot, but those words were evidently used as a part of the description of the tract of land over which the ''right of way for railroad purposes as now established,'' was conveyed. The learned counsel, in endeavoring to fix a meaning for the term ''right of way for railroad purposes, as now established over the land,'' have cited some authorities, none of which seem to have any direct bearing upon the meaning of the expression, as used in the deed.

The case of Maysville & Big Sandy R. R. Co. v. Ball et al., 108 Ky., 247, is relied upon by appellees, as defining the meaning of the term ''right of way,'' when applied to railroads. In that opinion, the case of Joy v. St. Louis, 138 U. S., 44, is referred to, as defining the term, as follows: ''Now, the term 'right of way' has a two-fold signification. It sometimes is used to describe a right belonging to a party—a right of passage over any tracks—and it is, also, used to describe that strip of land which railroad companies take upon which to construct their road bed.'' The case of Maysville & Big Sandy R. R. Co. v. Ball, et al., *supra,* was wherein, Ball and others had obligated themselves to provide the railroad company with a right of way upon which to construct its road, of the width designated by the engineer of the company. Having done this, Ball was as-

serting a claim for damages, caused by the operation of the railroad, to his property, which was not on the right of way, which had been designated by the engineer. The question, as a matter of law or fact, as to what should be considered the width or extent of a "right of way," as applied to railroads, was not presented for determination in that case, nor was it determined. Following the quotation, *supra,* in that opinion, the court said further: "This definition of 'right of way' was recognized as being correct in New Mexico v. United States Trust Co., 172 U. S., 181. In our opinion, the language used in the contract indicates that the guarantors only obligated themselves to have conveyed to the railroad company the strip of the width designated by the engineer of the appellant." In Joy v. St. Louis, *supra,* one railroad company claimed the right, at a certain place in the city of St. Louis, to use the right of way of another railroad, under a contract, and the question to be determined, was whether under the contract, the latter railroad company had a right to use the tracks of the former, or the mere right to construct and use another track over the right of way, and the court held, that under the contract, that the latter company had the right to use all of the right of way, including the former company's tracks and sidings, over the right of way, and it was in this connection that the court made the definition of a "right of way," referred to by this court in Maysville & Big Sandy R. R. Co. v. Ball, *supra.* So, in neither of the cases, the exact question presented for determination, in this case, was really under consideration, nor determined. A reading of the opinion in Joy v. St. Louis makes it very plain, that the court did not intend by its language to restrict the "right of way," as applied to a railroad company, to its tracks or road bed.

The case of New Mexico v. U. S. Trust Co., 172 U. S., and U. S. Trust Co. v. Atlantic & Pacific R. R. Co., 47 Pacific, 725; and New Mexico v. U. S. Trust Co., 174 U. S., 545, relied upon by appellants, as determining their rights under the deed, in the case at bar, are not decisions in point. These decisions were based upon the terms of an act of Congress. The Federal Congress granted to the Atlantic & Pacific R. R. Co. a right of way over the public lands, two hundred feet in width, and to include as might be necessary in the operation of the road, the road bed, ties, rails, station buildings, work

shops, depots, machine shops, and other such structures necessary in the operation of the road, and provided that this right of way should be exempt from taxation. The New Mexico authorities undertook to subject all the ties, rails, depots, station buildings, work shops, machine shops, and other such structures necessary in the operation of the road, to local taxation, and the courts held that all of the above named things were a part of the right of way, and free from taxation. By the express terms of the act of Congress, the grounds necessary for the above named buildings were a part of the right of way granted, and the opinions in the cases, *supra,* were based upon the terms of the statute. In this State, however, we have no statute prescribing the width or extent of a right of way, as applied to railroads, nor is there any invariable rule adhered to by railroad companies defining the width or extent of the right of way, and the terms of the deed, under which appellants claim, were not selected with reference to any statute or rule of constructing railroads. It would seem that the right of way of a railroad is the grounds owned and used by a railroad company for the purposes of operating the railroad, and over which the railroad track or tracks are constructed, and the necessary buildings used for railroad purposes are situated. Depots, station buildings, car sheds, shops, and other structures used in connection with the operation of the railroad, are as much a part of the necessary things for the operation of the road as the tracks, and rails, and ties upon the tracks, and there is no reason why the grounds occupied by such buildings should not be the railroad's right of way, as well as its road bed. The deed from Monarch to the Owensboro, Falls of Rough & Green River R. R. Co. shows that the right of way over some tracts of land was twenty feet in width, and over other tracts it was thirty feet. Looking to the deed itself for its meaning, it is evident that Monarch did not intend to limit the width of the right of way over the lot, in controversy, to the width occupied by the railroad track. The deed, while prescribing the width of the right of way over other tracts, used, in defining the extent of the conveyance over the lot, in controversy, the significant language—"right of way for railroad purposes, as now established" over the land. The deed meant, and conveyed to the railroad company for a "right of way," so much of the land, as, upon the

date of the deed, was then occupied by the tracks and switches of the railroad company, and by buildings used in the operation of the road, and the conduct of its business. There does not appear to be any other meaning to the words, "for railroad purposes, as now established," as used in the deed. Proper effect should be given to this language, as well as any other in the deed. So much of the land as was not occupied by the tracks, switches, and buildings of the railroad company, on the 5th day of July, 1892, the date of the deed from Monarch to the railroad company, is the property of the appellees, and they are entitled to have their title to it quieted. The court was in error when it adjudged that the appellants were the owners of sixty-six feet, in width of the lot, along its southern side, because this was an arbitrary finding, not based upon any evidence in the case. It, therefore, appears that the line designated by the court is not the proper boundary line between the portion of the lot owned by appellees and that owned by appellants. The evidence in the case was not taken with the view of meeting the issue in the case, as we see it, and we are unable to determine from it what is the actual line between the litigants.

The judgment appealed from is reversed upon both the original and cross-appeals, and the case is remanded to the court below, with directions, after giving each party a reasonable opportunity to further prepare the case, by the taking of such further proof as they may desire, to ascertain and determine the portion of the lot which was occupied by the tracks, switches, and buildings of the railroad company on the date of the deed to it from Monarch, and to allot such portion to appellants, and quiet the title of appellees to the remainder of the land, and for proceedings in conformity with this opinion. Each party will pay their own costs in this court.