### SAULSBERRY v. SAULSBERRY.

No. 8761.

Circuit Court of Appeals, Sixth Circuit.

June 25, 1941.

H. R. Wilhoit, of Grayson, Ky., for appellant.

H. R. Dysard, of Ashland, Ky. (Dysard & Dysard, of Ashland, Ky., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This action was originally instituted by appellee, E. L. Saulsberry, against appellant, W. F. Saulsberry, and J. P. Saulsberry and his wife, Nell Saulsberry, to establish appellee's right to a way across the lands of appellant and his co-defendants, which they owned in fee, as co-tenants. The court granted the prayer of appellee's petition, from which judgment W. F. Saulsberry alone appeals.

The facts are not in dispute and are substantially as follows:

Prior to 1896, William Saulsberry owned in fee a tract of land of approximately 700 acres, through which the Chesapeake & Ohio Railroad Company built its railroad. In that year he conveyed these lands jointly to his sons, Ray Saulsberry and Harry Saulsberry.

This 700-acre tract separated the railroad from another tract of land lying south and owned by John R. Huntsman, who died in 1880 intestate and left surviving him his widow and six children. His wife was allotted as a dower, 154 acres referred to in the record as the "Huntsman Dower Tract." In 1896, Ray Saulsberry and Harry Saulsberry, owners of the 700-acre tract adjoining the railroad, acquired jointly a one-sixth undivided interest in the Huntsman Dower Tract.

In the year 1901, Ray Saulsberry, then half-owner of the front (or 700-acre) tract, conveyed his undivided one-twelfth interest in the Huntsman Dower Tract to the appellee, E. L. Saulsberry, and in the deed gave to the grantee a right-of-way over the front (or 700-acre) tract in the following language: " * * * also sells and conveys to the party of the second part a right of way over the lands lying south of the railroad and between Needle-Eye Eunnel on the West and forks of the creek on the east and the right to open and operate on said land one or more openings for minerals or other substances. The way to be such as to afford party of the second part sufficient passage for transit transportation from and over said land of such products in most convenient form."

In 1908, Harry Saulsberry, then half owner of the front (or 700-acre) tract, conveyed his undivided one-twelfth interest in the Huntsman Dower Tract to A. D. Saulsberry and in the deed gave to the grantee a right-of-way over the front (or 700-acre) tract in the following language: "And there is hereby given and granted to the party of the second part his heirs and assigns the right to pass over said tract of land and the right to construct rail-road or tram-road thereon, and the right to make entries therein or there-through and remove the fire-clay from such entries for the purpose of mining and removing fire-clay and other minerals from off the tract of land hereinbefore first described, and any land owned or may be owned, and transport same to the line of The Chesapeake and Ohio Rail-road."

In 1930, A. D. Saulsberry conveyed his one-twelfth undivided interest in the Huntsman Dower Tract to appellee Saulsberry who at that time owned the other one-twelfth and, as a part of the deed, included therein a right-of-way over the front (or 700-acre) tract in the following language: "Also all right title and interest in and to the right-of-way for egress and ingress to and from the above described land over, through and under any and all lands between the above described land and the Chesapeake and Ohio Railroad, from what is known as Needles Eye Tunnel west of Aden Station to a point at second railroad bridge east of Aden Station in Carter County, Kentucky."

Between 1908 and 1914, John M. Saulsberry obtained title to the front 700-acre tract owned by Ray and Harry Saulsberry, one-half by Commissioner's deed and one-half by direct conveyance. In neither deed was any reference made to the alleged easements, although the deed describing them had theretofore been duly recorded in the Carter County Court Clerk's office.

In 1920, John M. Saulsberry died intestate and left surviving him appellant, W. F. Saulsberry, J. P. Saulsberry (original defendant who does not appeal), Betty Rupert and Charlotte Wilsch. On July 10, 1935, Betty Rupert and her husband, George D. Rupert, Charlotte Wilsch and her husband, Louis Wilsch, in writing, ratified the easements, if any, appellee E. L. Saulsberry had acquired over the lands in question by reason of the deeds to him from Ray Saulsberry and A. D. Saulsberry. So far as the record shows, W. F. Saulsberry, appellant, and J. P. Saulsberry, defendant below, the other two children of John M. Saulsberry, failed to sign this instrument although their names were carried in the caption, nor did they ratify or consent to the present easements. Prior to the institution of this action, none of the grantees of the present alleged assessments had attempted to exercise any of them.

The court appointed a surveyor to go on the premises and lay off rights-of-way pursuant to the deeds in question, who reported that five strips of land out of the 700-acre tract, as found in the margin,[1] should be

---

[1] Tract "A." A strip of land 50 feet in width extending along the south line of the Chesapeake and Ohio Railway, beginning at a point 820 feet west of Aden Station House and extending in a westerly direction 1270 feet to opposite the Railroad bridge across Little Sinking Creek near Needles Eye Tunnel. This tract being for the purpose of constructing a standard gauge railroad siding. Also to provide room for making necessary changes of the creek channels and roadway.

Tract "B." Beginning at a point in the south line of the Chesapeake and Ohio Railway said point being easterly along

set aside for use of the appellant. The court approved the report of the surveyor and entered a judgment in accordance therewith, hence this appeal.

Appellant relies on the following grounds for reversal: (1) that the grants or attempted creation of the alleged easements were void because entered into by a co-tenant without the contemporaneous consent, express or implied, of the other co-tenants who have never ratified his act; (2) that the alleged easements are void for uncertainty and indefiniteness; (3) that the easements awarded by the court were in excess of the alleged grants.

Under the rule prevailing in Kentucky, tenants in common of land are seized by the moiety and by the whole or, as expressed in the ancient rule, per my et per tout. Each has a right of entry and use of all the land and neither can exclude the other for the reason that such conduct would be inconsistent with their joint rights. Such tenant, being unable to convey title to anything less than his whole interest as against his co-tenants of the common land cannot grant an easement which confers any right that may be enforced against the other owners. Elkhorn Coal Company v. Justice, 202 Ky. 607, 260 S.W. 369. It does not follow from this, however, that such a conveyance is void. It is effective against the grantor and a court of equity may compel the grantor to take steps such as having the common property partitioned in order to make his conveyance effectual. At common law a deed made by a joint tenant in common or co-parcener purporting to convey in severalty is not void, but conveys the interest of the grantor in the premises purporting to be conveyed. Bacon's Abridgement, Vol. 5, p. 288. By the Act of the Virginia Convention of 1776, it was declared "that the common law of England, all statutes or acts of parliament made in aid of the common law prior to the fourth year of the reign of King James I, and which are of a general nature, and not local to that kingdom * * * shall be the rule of decision, and shall be considered in full force, until the same shall be altered by the legislative power of this colony." (M. & B. Stat. 612.)

The present constitution of Kentucky, Section 233, provides that "all laws which, on the first day of June, one thousand seven hundred and ninety-two, were in force in the state of Virginia, and which are of a general nature and not local to that state, and not repugnant to this constitution, nor

said right of way line 350 feet from the center of the first bridge crossing Sinking Creek east of Needles Eye Tunnel; thence at right angles to said C. & O. Railway Company southernly 480 feet more or less to the property line between the clay property of E. L. Saulsberry and the Saulsberry heirs; thence with said property line easterly 400 feet; thence northerly 350 feet more or less to the south right-of-way line of the C. & O. Railway Company; thence westerly with said right-of-way line 400 feet to the beginning. This tract is necessary for the construction of tipple, scale house, stables, mine openings, ventilating plant and other necessary appliances for the operation of mines.

Tract "C." A tract of land 30 feet in width and approximately 2,600 feet long, situated on the south side of the C. & O. Railway and along the south side of Little Sinking Creek at the outcrop land of the Aden clay seam; said right-of-way begins at the east end of the E. L. Saulsberry property between the two railroad bridges east of Aden Station and extends along at and near the outcrop of the Aden clay seam in a westerly direction approximately 2,600 feet to connect with Tract "B." This right-of-way is for the purpose of construction of a tramroad for the transportation of clay from the east properties of E. L. Saulsberry to the loading point at Tract B.

Tract "D." A tract of land 50 feet in width and approximately 550 feet long, extending along and near the outcrop of the Aden Clay seam in a westerly direction from Tract "B" to points necessary for the opening of mines in the Saulsberry 48½ acre tract and the 104 acre tract. This 50 feet strip is for the purpose of tramroad to transport clay to the loading points on Tract "B," the extra width is made necessary by the topography at this point.

Tract "E." Beginning at a point in the line between the clay lands of E. L. Saulsberry and Saulsberry heirs at the end of the first call in said line south of the Needles Eye tunnel (maple bushes called for); thence with said line 521° W. 330 feet to a black oak and hickory at falls of branch; thence 358° E. 148.5 feet to a beech stump; thence N. 67 E. 200 feet; thence N. 21 E. 350 feet fore or less; thence westerly 200 feet to the beginning. This tract is necessary for the opening of mines, construction of ventilating system and necessary appliances to operate and mine clay on the E. L. Saulsberry 48½ acre and 104 acre tracts.

to the laws which have been enacted by the general assembly of the Commonwealth, shall be in force within this state until they shall be altered or repealed by the general assembly."

In Virginia, it is expressly held under the common law that a conveyance by one joint tenant in common of a part of his interest in an entire tract held in common passes the title of the grantor in such part, not only as against himself and those claiming under him, but as to all other persons except the co-tenants injured by it, and as to them also, except so far as they would be injured. Robinett v. Preston, 2 Rob., Va., 273; McKee v. Barley, 11 Grat., Va., 340.

In the case of Nevels et al. v. Kentucky Lumber Company, 108 Ky. 550, 56 S.W. 969, 49 L.R.A. 416, 94 Am.St.Rep. 388, the court, without referring to the Virginia Statute or the Kentucky Constitution, but quoting from 2 Am. & Eng. Enc.Law, p. 1090, and referring to separate conveyances by joint tenants or tenants in common, said "But such a sale is not, as a general rule, void; the purchaser's title attaching to such interest, and only such as the tenant of whom he purchased was possessed."

In the case of Clinchfield Northern Railway Company v. Cline & York, 185 Ky. 528, 215 S.W. 538, 542, the court said: "A tenant in common, may make conveyances by metes and bounds of portions of the jointly owned property, and the grantees in them will acquire certain rights under the conveyances, but whatever rights are acquired by them are subordinate to the rights of the other joint owners of the lands, who do not join in them. The vendees in such conveyances acquire only the right of their vendor in the boundaries described, but they acquire no right which will prejudice the rights of the nonassenting cotenants."

In Kentucky, the rule prevails that a tenant in common may bind his own undivided interest in the common property by an easement in favor of third persons and, this being true, the appellee having acquired the easements in question by separate deeds from each of the joint tenants, they became valid and enforceable against the whole estate, and the conveyances when made were not void.

The rule also prevails in Kentucky that a deed is void in which the description is so uncertain as to be meaningless and the instrument supplies nothing to enable the premises to be identified. A description is insufficient where the land cannot be located without the exercise of arbitrary discretion. Justice v. Justice, 239 Ky. 155, 39 S. W.2d 250. Appellant urges on us that the application of the above rule makes void the present deeds, because no right-of-way over said lands is specified or described and the attempted conveyance is void for uncertainty, indefiniteness and lack of description.

In the Justice case, supra, A. E. Justice conveyed to W. H. Justice, a tract of land by general description. Incorporated in the deed was this provision: "Except and observe out of this deed of conveyance from V. J. to W. H. J., Jr., a right of way for railroad purpose and all rights and privileges for railroad purposes, and said railroad company is to have privilege of to work over said land of right of way whatever such boundary of said right of way from said railroad purpose and to me said land whenever at any time, they to have and to hold and to work over to have all the minerals, salt water, gas, and oil and all that has not been sold on said right of way and for all other transportations over said right of way, also on or about 50 trees of merchantable timber excepted with privilege to haul it to river."

The court found the terms of the reservation or exception void because the description was so general and vague as to fail to limit the right of way or to give it a situs.

The descriptions in the present deeds are much more definite and certain than in the cited case. In the Ray Saulsberry deed the right-of-way was located over the lands lying south of the railroad between Needle Eye Tunnel on the west and forks of the creek on the east and the right was also conveyed to operate on said land one or more openings for minerals or other substances. In the Harry Saulsberry deed, the right to pass over the land pointed out, in substance, that it was to be of such breadth and length as to permit of the removal of fire clay from entries made in the property and transport it to the line of the Chesapeake and Ohio railroad.

In the Justice deed a right of way was reserved for railroad purposes and all rights and privileges in connection therewith and it was not limited as to the amount of land which could be taken nor was the direction of the passway fixed. In other words, the exception had neither a begin-

ning nor an end and the court found that the entire tract was within the reservation. The court, in the Justice case, unlike the case at bar, was concerned with a reservation or exception and under the laws of Kentucky, such instruments must be construed in favor of the grantee where there is any ambiguity or uncertainty as to the nature or extent of the reservation or exception. Towns v. Brown, Ky., 114 S.W. 773; Frisbie v. Bigham Masonic Lodge, 133 Ky. 588, 118 S.W. 359; Higdon v. Nichols, 204 Ky. 56, 263 S.W. 665.

In Kentucky, all that is required under the law to pass title to an easement is a description identifying the land which is the subject of the easement and expresses the intention of the parties. Appellant's land is the subject of the easements and it has been described with sufficient particularity. The subject matter of the easements could be identified by reference to external standards. Under such conditions, these standards need not be in terms explained in the instruments of conveyance. Stegman et al. v. City of Fort Thomas, 273 Ky. 309, 116 S.W.2d 649.

Where all the circumstances of possession, ownership, situation of the parties and their relation to each other and the property are disclosed as they were when the negotiations took place and the writing entered into, if the meaning and application of the instrument considered in the light of those circumstances are plain and certain, the parties will be bound thereby. Hyden v. Perkins, 119 Ky. 188, 83 S.W. 128; Fishback v. Glasgow Railway Company, 140 Ky. 155, 130 S.W. 982; Stephens v. Terry, 178 Ky. 129, 198 S.W. 768; Hammonds v. Eads, 146 Ky. 162, 142 S.W. 379. In our opinion, considering the circumstances under which the deeds were entered into, the descriptions therein were sufficient and the deeds are not void for uncertainty and indefiniteness.

In Kentucky, when the right-of-way is not bounded in the grant, the law bounds it by the rule of reasonable enjoyment, which means that the easement must be a convenient and suitable one and one which does not unreasonably interfere with the owner of the servient estate, and that a reasonable and convenient way for all the parties is thereby implied in view of the circumstances. Devine v. McRohan, Ky., 65 S.W. 799; Illinois Central Railroad Company v. Taylor, 164 Ky. 150, 175 S.W. 26. In such a case the grantor has the right

in the first instance to designate and locate the passways, and if his designation be reasonably suitable for the purposes of the grant, his selection cannot be questioned. If the grantor omits to exercise his right within a reasonable time, the grantee may make the selection which will be upheld unless he has abused his right. In cases where the parties cannot agree, the location of a way may be determined by the court.

The jurisdiction of a court of equity to locate the route not fixed by contract or the selection of the parties is clear. If the location be contested, the controversy might not be settled by the negative results of many actions at law. Equity can move to fix the route affirmatively and specifically. Link v. Caldwell, Ky., 59 S.W. 502. There is no evidence in the record that the court abused its discretion in fixing the rights-of-way, or that the easements selected by it were not suitable or that they unreasonably interfered with the rights of the appellant in view of the terms of the conveyances.

Judgment affirmed.