## Gatliff v. Carson-Muse Lumber Company, etc.

(Decided September 30, 1914.)

## Appeal from Whitley Circuit Court.

1. **Land—Title—Action of Trespass to Try—Adverse Possession.—** In an action to recover damages for a trespass committed by the defendant's cutting timber on land to which the plaintiff holds a good paper title; and the answer of the defendant admits the sufficiency of plaintiff's paper title, but justifies the cutting of the timber on the ground that such title has been lost to the plaintiff by the defendant's adverse possession of the land; the burden is upon the latter to establish by the evidence, not only that his possession of the land has been adverse—that is, hostile to the plaintiff and all others—but also actual and extended to a well-defined and marked boundary, continuously and uninterruptedly, for as much as fifteen years before the institution of the plaintiff's action.

2. **Adverse Possession—Failure of Proof of Adverse Possession— How Jury Should Be Instructed.—**If, on the trial, there should be a failure of proof as to the adverse possession relied on by the defendant, the jury should be instructed to find as to that question for the plaintiff; and in such state of case the only controverted question of fact to be determined by the jury would be as to the damages sustained by the plaintiff on account of the cutting of timber complained of, which should be submitted to them under a proper instruction.

STEPHENS & STEELY and SHARP & SMITH for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, A. Gatliff, attempted to recover of the appellees, Carson-Muse Lumber Company and Kentucky Lumber Company, damages for trespasses committed by the last named company in cutting and removing large quantities of poplar and other timber from a one hundred acre tract of land, described in the petition, of which appellant claimed to be the owner; it being alleged in the petition that though the cutting and removal of the timber was done by the Kentucky Lumber Company, it was instigated and caused by the wrongful acts of the Carson-Muse Lumber Company in claiming to own the timber and selling it to the Kentucky Lumber Company.

The answer of the appellees admitted the cutting of timber on the land in question, but alleged it to be

smaller in quantity and value than averred in the petition; and, in addition, denied appellant's title to the land or timber, and pleaded in bar of the action the statute of limitations, arising, as alleged, from the appellee Carson-Muse Lumber Company, and its vendor's actual, adverse and continuous possession of the land to a well defined, marked boundary, for more than fifteen years next before the institution of the action, which, it was further alleged, made it the owner of the land and timber sold therefrom to the Kentucky Lumber Company. The affirmative matter of the answer was controverted by reply.

The trial resulted in a verdict in behalf of appellees; appellant's dissatisfaction with which and the refusal of the circuit court to grant him a new trial, resulted in this appeal.

It is admitted by appellees—the admission appearing by an agreement of record—that appellant has a good paper title to the land in controversy, connected by duly acknowledged and recorded deeds of conveyance back to Alfred L. Clapp, patentee of a large body of land of which the tract in controversy was a part. So, the principal question to be determined on this appeal is, does the proof of possession adduced in appellees' behalf on the trial in the court below support the verdict?

The cutting of timber complained of by appellant was on what is known on a map appearing in the record as the Isaac Ellison one hundred acre patent, admitted to be junior to the Clapp patent and embraced within its boundary. A part of this land seems to have been conveyed by Isaac Ellison to W. P. Croley, but the deed was never recorded, and Croley's heirs at law conveyed it to the appellee, Carson-Muse Lumber Company. It does not appear from the evidence that Ellison ever had possession of the land. It was separated from the land upon which W. P. Croley lived by an intervening tract of another and Cotton Creek; it is not, therefore, a part of or included in the boundary of his home tract. There was no evidence that the heirs at law of W. P. Croley ever had actual possession of the Ellison tract. The only actual possesion shown was by W. P. Croley about twenty-two years ago. At any rate it was prior to his death, which must have occurred in or prior to the year 1896, as his will was probated that year. According to the evidence there was then an old cabin, a few apple trees and the remains of an old chimney on the land near Bolins' place and a small clearing of five or six acres,

enclosed by a rail fence, on the other end of the land near the Jones tract. It does not appear from the evidence by whom the cabin was built or the land cleared and fenced, but does appear that the cabin was occupied one summer by one Adler as a tenant of W. P. Croley; that Adler that year cultivated the cleared land in corn and it was by Croley cultivated in corn the following year. According to the evidence the fence around the cleared land was never maintained after W. P. Croley's death, and more than fifteen years ago the greater part of it was destroyed by a forest fire.

The above is the only actual possession of the land shown by appellees or their vendors. In other words, it conclusively appears from the evidence that the possession of appellees and their vendors was never actual, adverse or continuous for as much as fifteen years; therefore their claim to the land must yield to the superior title of appellant, and the trial court should have so instructed the jury and only submitted to their decision the issue of fact as to how much timber was cut from the land by appellees and its value.

If it had been proper to submit to the jury the question of possession, the instruction given by the court on that subject was clearly incorrect, as it omitted the word "actual." Possession to defeat title must be actual, as well as adverse and continuous, to a well defined and marked boundary for as much as fifteen years before the institution of an action by the holder of the legal title. As said in White v. McNabb, 140 Ky., 820, and numerous other cases decided by this court: "To acquire title by adverse possession, the possession must not only be actual, but so continuous as to furnish a cause of action every day during the whole period."

The only actual possession here was temporary and so soon broken, as to confer no right upon appellees or their vendors to the land in controversy. If, on another trial, the evidence as to appellees' possession is substantially the same as on the last trial, the court should not submit that question to the jury.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.