## Hellard, etc. v. Hubbard, etc.

(Decided October 15, 1914.)

### Appeal from Jackson Circuit Court.

1.  Adverse Possession—To Constitute, Possession Should be Continued and Uninterrupted for Fifteen Years.—To acquire title by adverse possession, the possession must be such as to give a cause of action for every moment of the 15 years, and, if the possession is broken, then the time must be counted from the break, and not from the time the possession began.

2.  Adverse Possession—Possession Must be Open and Continuous.— The occupation must be open and continuous, and where it is not denied that there was a period of nine months in which the claimant neither occupied the land in person nor by tenant, the possession was not continuous.

A. W. BAKER for appellants.

J. R. LLEWELLYN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Hubbard is the claimant and occupant of about fifty-five acres of land. It is conceded that unless his adverse

possession has ripened into a legal title, then the right of the Hellards should prevail.

The case was submitted to the court without the intervention of a jury, and his judgment was in favor of the Hubbards, who claimed it by adverse possession.

The possession under which the Hubbards claimed begins with Elihu Roberts in 1894. Roberts had lived on the land several years before this, but had abandoned it, and gone to Arkansas, where he lived three or four years. Roberts says he left his father to look after it, but his father lived several miles away, and no one resided upon, or was in the actual possession of the land, so that the possession really begins in 1894, when Roberts returned from Arkansas, and again settled on the place. Possession was held in succession by Roberts and his boys until November 24th, 1902, when the Roberts sold it to Elihu Angel. On September 11th, 1903, Angel sold it to Hubbard. That the Hubbards have had actual possession ever since their purchase in 1903, to February 9th, 1912, when this suit was instituted, is not disputed. The question here is, whether from the time Elihu Angel purchased it in November, 1902, until he sold it in September, 1903, the land was occupied, and, if not, whether this nine months' break was sufficient to defeat the Hubbards' claim of fifteen years continuous adverse possession.

The proof shows that there were two log cabins on the land, and a part of it cleared and under fence. How much of it was under fence does not appear. These buildings and fences were built before Angel purchased it. When Angel purchased in November, 1902, one of the Roberts boys was living on it, and, as the proof shows, continued to live on it two or three weeks. Angel never did occupy or live upon the land, but he says he rented it to "a fellow, Jake Tussey, and he went over there and fixed up the floor in the houses to move in, but he did not move in." It is apparent that no one occupied the houses or lived upon the land, or made any use whatever of it during these nine months, and no effort was made to get another tenant.

In Trotter v. Cassady, 3 A. K. Mar., 365, 13 Am. Dec., 183, this court held, in an action under the twenty year statute, that:

"To make the bar of 20 years' possession operative and effectual to destroy a right of entry, it is necessary

that the possession, claimed as adverse, should be shown to be continued and uninterrupted. Or, in other words, if there is any period during the 20 years in which the person having the right of entry could not find an occupant on the land on whom he could bring and sustain his ejectment, that period cannot be counted against him as part of the 20 years."

In Jones v. McCauley's Heirs, 2 Duv., 14, it was held:

"The law of limitation, being reasonable and founded on principle, does not allow the statute to run when there is no cause for action; and, therefore, to bar an ejectment by time, the adverse possession must have been, not only actual, but so continued for 20 years as to have furnished a cause of action every day during that whole period, and consequently, as conclusively and consistently adjudged, claim of title, however notorious, and occasional use under that claim, without actual possession, continued without intermission or interruption for 20 years, will not bar an adverse right of entry." To the same effect is Barr v. Potter, 57 S. W., 478, 22 Ky. Law Rep., 416; Hibbard v. Wilson, 32 S. W., 1086, 17 Ky. Law Rep., 930."

In the case of Ashcroft v. Courtney, 121 S. W., 626, the court said:

"The rule is that to acquire title by adverse possession, the possession must be such as to give a cause of action for every moment of the 15 years, and, if the possession is broken, then the time must be counted from the break, and not from the time when the possession began."

In the case of White v. McNabb, 140 Ky., 828, the court says: "One may recover if he shows that he and those through whom he claims have been in open, notorious, actual, continuous, peaceable and adverse possession of the property in controversy for a period of fifteen years. In this case appellee made no attempt to show a paper title from the Commonwealth. His right to recover, then, depends upon whether or not he, or those through whom he claims, acquired title by adverse possession. To acquire title in this manner the adverse possession must not only be actual, but so continued as to have furnished a cause of action every day during the whole period. (Braxdale v. Speed, 1 Mar. 106; Jones v. McCauley, 2 Duv. 14). Different and distinct periods of possession cannot be added to constitute a bar. Wickliffe v. Ensor, 9 B. M., 253."

In the case of Starks v. Jackson, et al., 142 Ky., page 17, the court says:

"It was incumbent upon appellant to show that either in person or by his tenant the place was continuously occupied from the time he entered, or at least for more than fifteen years. Nothing short of such showing will suffice." See also Gatliff v. Carson-Muse L. Co., 159 Ky., 833.

So, then, it is seen that this court has adhered to the rule that a continuous occupation was necessary. The only exception, if it can be called such, is the case of Turner v. Thomas, 13 Bush, 518, where it is said:

"That temporary absence of a tenant from a portion of the tract, the remainder being all the while actually held * * * did not amount to a break in the possession."

In that case, only a part of the land was unoccupied, and that temporarily. In the case at bar, it seems that the tenant to whom Angel rented the land, never did anything more than fix the floor of the house. He never moved into it, and the owner never took any other steps to occupy or keep possession of it, so that it remained absolutely vacant and unoccupied from November until September following.

In the cases of Redman v. Sanders, 2 Dana, 69; Cardwell v. Sprigg's Heirs, 7 Dana, 36; and Moss, et al. v. Scott, 2 Dana, 274, the Champerty statutes were under consideration, and it was held, that when no one is on the land against whom the claimant could bring his action, there is no adverse holding within the meaning of the Champerty law.

The Missouri, Illinois, and Arkansas courts, in considering the effect of breaks in the possession, will give consideration to the intent, and if it appear that in leaving the land unoccupied, it was not intended as an abandonment of it, then it will not be held to be a break in possession. But this court has never approved that doctrine, and has constantly ruled that the occupation must not only be open but continuous and actual, and it can not be said that the possession is continuous where it is not denied that there was a period of nine months in which the claimant neither occupied it in person nor by tenant.

For this reason the judgment of the lower court is reversed.