## Gatliff v. Carson-Muse Lumber Company.

(Decided May 3, 1916.)

### Appeal from the Whitley Cricuit Court.

1. Adverse Possession—Title—Boundaries.—To authorize a verdict for one claiming possessory title to land the evidence must show that he had not only the actual, adverse, continuous and uninterrupted possession for fifteen years, but must also show that he, during all that time, had a well marked and a well defined boundary to which he claimed.

2. Adverse Possession—Occupancy—Notice—Boundaries.—One who purchases a tract of 101 acres of land, 100 acres of which is embraced in one patent and one acre in another, and who lives in a house on the one acre, has no such possession of the 100 acre tract as will oust the constructive possession of the real owner thereof claiming under a senior patent; and his occupancy of the one acre is no notice to the holder of the senior patent that he was claiming possession of the 100 acres so as to make a deed for the 100 acres champertous, made while he was so occupying the one acre.

3. Public Lands—Unappropriated Lands—Actual Settler.—A patent covering land occupied by an actual settler is not void as to such land under the provisions of section 4703, Kentucky Statutes, providing that no person shall locate land so occupied by an actual settler until he has given such settler three months' notice of such intention; failure to give such notice only operates to give the settler the right to go into a court of equity and have the patent adjudged to be for his benefit to the extent it interferes with his rights.

4. Public Lands—Unappropriated Lands—Actual Settler.—An actual settler who occupies vacant lands but who takes no steps to perfect his rights thereto under the statute, only has an inchoate equity, which is a personal right to remain on the land, but no such right or interest therein as he may sell, assign or convey.

EDWARD M. GATLIFF, HENRY C. GILLIS and STEPHENS & STEELY for appellant.

TYE & SILER and ROSE & POPE for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Originally this was an action by appellant seeking to recover from the Carson-Muse Lumber Company and the Kentucky Lumber Company the value of timber alleged to have been taken by them from a one hundred acre tract of land claimed by the plaintiff.

The answer of those defendants asserted title in the tract of land described because of the alleged adverse possession which they and their vendors had had for the statutory period.

The trial in the circuit court resulted in a judgment and verdict for the defendants on this issue, and upon appeal to this court it was held that the evidence of adverse possession was insufficient to sustain the verdict and the judgment was reversed. Gatliff v. Carson-Muse Lbr. Co., 159 Ky. 833.

On the return of the case, however, the heirs of W. P. Croley, the vendors of the original defendants, filed their petition to be made parties defendant and asserted possessory title to the tract of land involved. They also in a separate paragraph pleaded that their ancestor W. P. Croley and his vendors were in possession of the tract of land at the time the plaintiff purchased the same and at the date of his deed therefor under which he claims, and rely upon the statute against champerty.

On the last trial, as in the former one, it is admitted of record that appellant has a good paper title to the land in controversy running back to the Clapp patent issued by the Commonwealth.

In its instructions the court authorized a verdict for the defendants in three aspects of the case: (1) On the issue of adverse possession; (2) on the issue as to champerty, and (3) on the alleged pre-emption right of William Bollin claimed to have been a remote vendor of the appellees.

The former opinion effectually disposed of the alleged adverse possession of the Croleys and Ellison, which was relied upon in the first instance as establishing that claim; but on the last trial the alleged adverse possession of one William Bollin was relied upon and three witnesses were introduced in an effort to establish it who were not introduced on the first trial. Those three witnesses were George Bollin, son of William Bollin, long since deceased, Anderson Alder and X. Alder.

George Bollin stated on his main examination that his father lived on the 100-acre survey for 15 or 20 years; that the first house which was built had been burned, and that his father had moved off of the land and lived for a year or two and then rebuilt the house and lived in it for about 15 years. Or, as he says, he is "nearly confident" that it was fifteen years. But on cross-examination he says he went to the war in September, 1862, and that at that time his father did not live on the 100-acre survey; that when he came back from the war in August, 1865, his father was living on a tract of land adjoining the Ellison survey and that he lived there with him less than a year when he rebuilt the house on the Ellison survey and moved thereon; that he did not know when the house was built on the Ellison survey, and presumably that was while he was gone to the war, but the dates which he gives unmistakably show that his father could not have moved in the first place onto this tract of land in controversy earlier than the fall of 1862, and that between then and 1866 or 1867 he had not lived on the land for at least part of the time. The Ellison survey was made in February, 1875, and the whole evidence shows that before that time William Bollin had left or removed from this tract of land. Even if he had lived continuously on it from the fall of 1862 until the fall of 1874, when the evidence shows he left it, he had not lived on it the statutory period of fifteen years. He further testifies that his father never pointed out to him the lines to which he claimed.

Anderson Alder says that when he was a boy fourteen years of age he was present when the Ellison survey was made, and that there were some marked corners or line trees around the boundary, and that when the survey was made they remarked some more; but that the lines which were already marked were claimed by those present to have been marked lines of some older surveys, and that when that survey was made Bollin did not live on the land.

X. Alder testifies that at one time he bought this 100-acre survey and an acre off of another tract, being 101 acres in all, from Ellison, and that he afterwards sold it to Croley and Ellison conveyed it to Croley; that his mother and brother lived in a house on this 101 acres, but the house was on the one acre which was not embraced in the Ellison survey.

There is no witness in the record who claims that William Bollin had any marked lines around the 100 acres, or that there were any marked lines around it until the Ellison survey was made in February, 1875, and at that time William Bollin had moved off the land. This evidence not only fails to show that William Bollin ever had fifteen years' possession of any part of the land, but totally fails to show that he at any time had any well defined or marked boundary while he occupied it, and it necessarily follows that there was no such evidence of Bollin's adverse possession as authorized the submission of the question of adverse possession to the jury.

Likewise the evidence of adverse holding at the date of the appellant's deed in 1889 was insufficient to submit to the jury the issue of champerty. The evidence of X. Alder does tend to show that at the date of that deed his mother and brother were living in a house on the one-acre tract of land embraced in the 101 acres which he bought from Ellison, but it shows affirmatively that at that time no one was living on or in the actual possession of the 100 acres in controversy. Manifestly their occupancy of and possession of the one acre did not extend over and include the 100 acres so as to oust the constructive possession of the real owner claiming under the senior patent. In other words, their occupancy of the one acre, which was outside of the 100-acre survey, was no notice to appellant when he took his deed that they were claiming possession of the 100 acres.

The court in substance instructed the jury that if they believed at the date of the Clapp survey and patent, under which appellant claims, William Bollin was in the actual possession of the tract of land as a settler, and which land was then vacant and unappropriated, that the patent was void as to said Bollin and those claiming under him because no notice was given to Bollin as is required by the statutes.

Section 4703, Kentucky Statutes, provides as follows:

"An actual settler on any vacant and unappropriated land shall have a pre-emption right to any number of acres, not exceeding one hundred, to be laid off as nearly as possible in a square, his improvements in the center. Before any other person shall locate the

same, three months' notice of intention to do so must be given to the actual settler, in which notice the land intended to be taken up or appropriated must be described."

There was some evidence that Bollin was at the date of the Clapp survey and patent, living in a small house on the 100-acre tract and had a few acres cleared around the house, and that being true he was entitled to the notice provided for in the statute, but the failure to give the notice did not make the patent void as to the 100-acre tract. He being on the vacant land had an inchoate equity in that part which he had actually inclosed, but not having any well marked or well defined boundary and not having taken any steps to perfect his rights as a settler, which the statute contemplates, he was not a settler upon or in possession of any part thereof except his actual inclosure. He had no survey made, he had no boundary marked; he had not caused his claim to be laid off as nearly as may be in a square, nor were his improvements in the center of the 100-acre tract. He merely had an inchoate equity in that part enclosed which he had taken no steps to perfect or to carry into grant. Instead of perfecting this right he merely lived on this small enclosure until about the fall of 1874, when without taking any such steps he abandoned whatever right he had by leaving the land.

It is apparent that a settler upon vacant land who takes no steps whatever to perfect or secure the rights, which under the statute he might have, has only a personal right to remain upon the land and no such right as he may sell, assign or convey.

The failure to give Bollin the notice required by the statute, as above stated, did not make the Clapp patent void as to this tract of land; Bollin's occupancy of the land at that time only gave him the right to go into a court of equity and have the Clapp patent, to the extent that it interfered with his rights as a settler, declared to operate for his benefit, and thereby perfect his rights as a settler. Hartley v. Hartley, 3rd Met. 56; Pearson v. Baker, 4th Dana 321.

It is apparent, however, from the recitation in the Ellison patent that Ellison was the assignee of Bollin and that Bollin was the assignee of Cox, Williams and McClancy of the 100 acres of land by virtue of a part of land warrant No. 464 issued by the Whitley county

court, that Bollin was not in fact claiming the land as an actual settler but was claiming it by reason of some assignment of a part of that land warrant, although there is no assignment in this record either from Bollin to Ellison or from Cox, Williams and McClancy to Bollin. That is the same land warrant declared by this court in the case of Bryant v. Ky. Lbr. Co., 144 Ky. 755, to have been void.

Upon a return of this case, if the evidence upon another trial is substantially the same, the only question which will be submitted to the jury is the value of the timber taken from the tract of land in question.

The judgment is reversed with directions to grant the appellant a new trial and for further proceedings consistent herewith.