FORD MOTOR COMPANY et al., Appellants,

v.

Barton S. POTTER et al., Appellees.

Court of Appeals of Kentucky.

Dec. 11, 1959.

Rehearing Denied Feb. 5, 1960.

E. B. Wilson, Pineville, for appellants.

Cleon Calvert, Pineville, for appellees.

MOREMEN, Judge.

Appellants, Ford Motor Company and Fordson Coal Company, hereinafter called Ford, have appealed from a judgment wherein Barton S. Potter and others, hereinafter called Potter, were adjudged to be the owners of a tract of land lying on the headwaters of Ulysses Creek and of Lower Jack's Creek in Clay County. A ridge separates the two watersheds, and the land involved here is divided by it into east and west parts. About three-fourths of the land is situated on Lower Jack's Creek, —or Jaw Bone, its tributary—and the remaining one-fourth on Ulysses Creek.

Ford claims complete chain of title to the property by reason of a senior patent issued to Chastain and Marcum (No. 41603 —surveyed September 9, 1868) and to De Groot (Nos. 44338, 44349, and 44351—surveyed April 13, 1870). Potter claims under a junior grant issued to Jesse Eversole for 100 acres. The Eversole patent is No. 45741 and was issued by the Commonwealth on September 30, 1871, as the result of an appropriation by survey made January 5, 1871, on a warrant from the Clay County Court issued to Justine Eversole and assigned by her to her son, Jesse Eversole, who was the patentee. Therefore, Ford is claiming under a senior patent, and Potter under a junior patent.

KRS 56.190 (prior to 1944) provided that every patent, insofar as it embraced land previously patented, was void. A statute of such substance had been in effect for many years—at least since 1835. Warfield Natural Gas Company v. Danks, 271 Ky. 452, 112 S.W.2d 674. The General Assembly of 1944 amended subsection (2) of KRS 56.190 by adding "unless the previous entry, survey, or patent itself is void; in which case the first subsequent lawful entry, survey, or patent, whether issued before, on, or after June 13, 1944, shall be valid * * *." In Day v. Knuckles, 297 Ky. 157, 179 S.W.2d 220, 222, it was remarked: "The amendment purports retroactive effect," but it was not found neces-

sary to pass upon its constitutionality. The act was amended, we suppose, because in a great number of opinions, this Court had stated without qualification that a junior patent on land covered by a senior patent is void. This rule also had been supplemented by cases in which it was held that land which had been embraced in a void patent could not again be patented as vacant or unappropriated land. Eastern Ky. Land Co. v. Ferguson, 65 S.W. 830, 24 Ky. Law Rep. 43; Kirk v. Williamson, 82 Ky. 161, 6 Ky.Law Rep. 108; and Stoffler v. Edgewater Coal Co., 198 Ky. 523, 249 S. W. 753. We have not, however, treated junior patents as being without value. They have been useful in situations such as where a junior patentee obtains possessory interest in the land by adverse dominion, and by the junior patent proves the boundary of his claim. Gatliff Coal Co. v. Lawson, Ky., 247 S.W.2d 375.

The junior patent in this case has such a use although we believe the decision should be controlled, not by KRS 56.190, but by KRS 56.200. This latter section, which has seldom been invoked during the course of the massive land litigation of this state, reads:

"An actual settler on any vacant and unappropriated land has a preemption right to any number of acres, not exceeding one hundred, to be laid off as nearly as possible in a square, his improvements in the center. Before any other person shall locate the same land, three months' notice of intention to do so must be given to the actual settler, describing the land intended to be taken up or appropriated. If the actual settler does not within three months from the giving of such notice, have the land entered and surveyed preparatory to obtaining a patent for it, the person giving the notice may enter and survey the land and proceed to obtain the patent."

The prime inquiry in this case concerns the legal status of an actual settler on vacant unappropriated land in this Commonwealth under the above statute.

Narration of the facts should begin with the troubled Civil War period. Woolery Eversole lived with his wife and family in what was then Clay, now Leslie, County on what was then known as Old Cow Branch of Caney Fork. Soon after war broke over the country, the community in which they lived was subjected to raids, foraging and pillaging from guerillas and other marauding bands. Woolery Eversole decided to enlist in the Union Army but before leaving he desired to find a safe place for his family to live. He found such a place on land which is the subject of this suit and which at that time was one of the wildest and most remote sections of the county, and there he settled his family. He enrolled in the army, was mustered into service January 15, 1862, and died October 7 of the same year in a hospital at Nashville, Tennessee.

On the land a house was built, some acres of land were cleared about it and an orchard was set out. Even now the chimney rocks are there; the clearing is still discernible and some of the apple trees are still standing. This was on the Ulysses side of the ridge.

Some time thereafter another member of the clan, John Estep, built a cabin on the Jack's Creek side of the ridge which he inhabited for a short time. Justine Eversole's son, Jesse, lived with his mother on Ulysses Creek until his marriage on January 19, 1870, at which time he moved into the cabin which had been built by his uncle, John Estep, and thereafter Jesse built a new house, cleared a substantial area, planted an orchard and performed other duties of husbandry. He lived there until the land was sold to Bowling in 1880.

We believe it may be fairly concluded from the evidence that the Eversoles continuously lived on and cultivated the land from 1862 to 1880. It is best to point out here that the land awarded Potter by the lower court amounted to about seventy

acres. This was due to the fact that the trial court held the title claimed by Ford to a part of it, under the Chastain and Marcum grant, was good because of a previous deed by one of the Potters' remote grantors. Potter apparently concedes that this is so and it will not be necessary for us to discuss this phase of the case.

The claim of the De Groot grants which were surveyed April 13, 1870, and patented in September of the same year requires some discussion. It appears that De Groot and his associates patented vast areas of land in eastern Kentucky by a method of surveying a base line for many miles and annexing to this base line two hundred acre surveys on both sides. One of these base lines passed through the Lower Jack's Creek and Ulysses Creek watersheds, and one of the two hundred acre surveys, which was projected, covered the ground which had been settled by the Eversoles.

There was no attempt made by Ford to prove that De Groot, before the surveys were made, gave notice to Jesse Eversole or his mother, Justine, of his intention to appropriate the land.

■ We agree with the trial court that once the Eversoles had settled upon this land, under KRS 56.200, De Groot and his associates were required to give notice of their intention to make surveys covering land in which Jesse Eversole had a preemption right. Until such notice was executed, Eversole was not required to survey and patent his right in the land protected by the statute. He did, however, within less than a year after the De Groot survey, exercise his preemptive right, survey and obtain patent, and, by those actions, title to the land covered by the Eversole patent vested in him. This case marks an incident where a patent, although junior as to time, was senior because of the peculiar preemptive rights given by the statute.

The facts in the case of Gatliff v. Carson-Muse Lumber Company, 169 Ky. 810, 185 S.W. 110, 111 (relied on by Ford)

are quite different from those presented here. There the settler had cleared only a few acres and had taken no steps to perfect his grant. The Court said:

"It is apparent that a settler upon vacant land who takes no steps whatever to perfect or secure the rights, which under the statute he might have, has only a personal right to remain upon the land, and no such right as he may sell, assign or convey.

"The failure to give Bollin the notice required by the statute, as above stated, did not make the Clapp patent void as to this tract of land; Bollin's occupancy of the land at that time only gave him the right to go into a court of equity and have the Clapp patent, to the extent that it interfered with his rights as a settler, declared to operate for his benefit, and thereby perfect his rights as a settler. Hartley v. Hartley, 3 Metc. 56; Pearson v. Baker, 4 Dana 321."

■ The circuit court held that Potter and his predecessors in title had also obtained title to the land by their actual physical domination of it over the years. We think this finding is amply supported by the record. After Jesse Eversole obtained a grant in 1871, he and other members of his family exercised dominion over the land from 1871 until it was sold to Bollin in 1880. Thereafter Bollin, his stepson and other successors in title had actual possession of the land. The time the Eversoles lived on the land prior to 1871 may not be computed in the duration of their adverse possession because one cannot acquire a possession adverse to the Commonwealth. Hartley v. Hartley, 60 Ky.Rep. 56. But we believe that the facts of this case are such that the successive occupations may be tacked because sufficient privity was established. H. B. Jones Coal Company v. Mays, 225 Ky. 365, 8 S.W.2d 626.

■ On this appeal Ford argues that it too has held adverse possession of the

property from the year 1923. This contention is based mainly upon certain leases which were executed to its tenants. The leases, copies of which have been filed in the record, indicate that they gave the right to certain tenants to live on and cultivate certain small parcels and, as part of the consideration, to take care of this wooded property. We believe the proof does not establish the vital elements necessary to constitute adverse possession and, since the leases were not recorded, and the occupancy lacks many of the characteristics necessary to establish adverse domain, we are satisfied that the trial court was correct in disallowing the claim.

We believe that the finding of fact and the conclusions of law by the lower court were correct and the judgment is therefore affirmed.