# Bryant v. Kentucky Lumber Company, et al.

(Decided October 10, 1911.)

## Appeal from Whitley Circuit Court.

1. Land Warrant—Failure to Register in Land Office.—One who enters land under a county court land warrant executing a bond for the amount due for the land and does not pay for the land or register his survey in the land office within the time given in the statute legalizing the proceeding, loses all rights under the survey.

2. Land Patent—Failure to Issue in Land Office.—A patent issued more than fifty years afterwards on the land warrant and survey is void and may be attacked in a suit for the land, the patent showing on its face on what papers it was issued.

T. Z. MORROW, STEPHENS & STEELY, GEO. P. JOHNSON and O. H. WADDLE & SON for appellant.

H. C. CLAY and H. H. TYE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

This litigation originated in an action of the Kentucky Lumber Company against Pres. Perkins and Roberta S. Bryant, the appellants, brought in October, 1906, in which the lumber company claimed that it was the owner of certain timber that Perkins acting for Roberta S. Bryant had cut and removed. Judgment for the value of the timber was sought, and also an injunction to prevent the defendant from cutting or removing timber.

Perkins, in his answer, admitted cutting timber, but claimed the right to do so under his co-defendant, Roberta S. Bryant; and she filed an answer, averring that she was and had been for more than fifteen years the owner of the land.

In 1907 the heirs and devisees of Robert Boyd came into the case to defend for their vendee, the Kentucky Lumber Company, and asserted that Robert Boyd for more than thirty years prior to his death, and they since his death, had been the owners of the land from which the timber was cut.

In 1907 Farris and Hays were also made parties to the action, and filed a petition setting up their claim to the land, but as they are not parties to the appeal it is not necessary to further notice their claim.

The title under which the Boyds claim was derived in this way: They claim that warrant No. 464 was issued by the Whitley County Court to Cox, McLancey and Williams upon the county treasurer's receipt, and that a part of this warrant was assigned to W. C. Gillis, and that under this warrant an entry of 40,000 acres of land was made on February 25th, 1851, and that a survey was made thereunder Febuary 28th, 1851, by Gillis, who sold and conveyed the land in controversy to Fannie Fletcher in October, 1867, and she failing to pay the purchase price which was then owing to Robert Boyd the lien was enforced by suit in 1870 and under the judgment Boyd bought it and obtained a commissioner's deed thereto. No patent was issued upon the survey of 1851 until June, 1908, although application therefor was made some two or three years prior to the time it was issued.

Roberta S. Bryant's claim is based upon a survey made on September 4, 1854, and the Hudson and Waits patent issued thereon October 15, 1855, for 10,000 acres. This patent embraced within its exterior lines some 140,-000 acres, but by its terms there was excluded all land within the boundary theretofore surveyed. Within this ten thousand acre survey lies the land in controversy.

It will be observed that the survey of Gillis under which the Boyd's claim was made in February, 1851, and that the survey under which Roberta S. Bryant claims was made in 1854. Therefore, if the Gillis survey was a valid one, the survey under which Roberta S. Bryant claims in so far as it embraces land included in the Gillis survey, is void, as the statute in force when both these surveys were made provided as does section 4704 of the Kentucky Statutes, that—

"None but vacant land shall be subject to appropriation under this chapter. Every entry, survey or patent made or issued under this chapter shall be void so far as it embraces lands previously entered, surveyed or patented."

American Association Limited v. Innis, 109 Ky., 595; Gibson v. Board, 102 Ky., 505. But, it is the contention of Roberta S. Bryant that the Gillis survey as well as the patent afterwards issued thereon to Boyd's devisees are void; and this is the only question to be determined on the appeal.

The patent issued by the Auditor in 1908 for the Gillis survey was based upon a county treasurer's re-

ceipt, a county court warrant and a survey made by the county surveyor. Copies of each were then filed with the Auditor. These are as follows:

"No. 464. Rec'd of Enoch Cox, James C. Williams and Jacob McLancy a bond for $1,000 for 40,000 acres of vacant land in Whitley County and the clerk of the Whitley County court is hereby authorized to issue a warrant for the same this 25th day of February, 1851.

"JAMES C. WILLIAMS, C. T."

"No. 464. The Commonwealth of Kentucky to the Surveyor of Whitley County, greeting: You are hereby authorized and directed by yourself or deputy to survey in one or more surveys for Enoch Cox, James C. Williams & Jacob McLancy 40,000 acres of vacant land in your county, they having produced to me, the county treasurer receipt for a bond one thousand dollars, the price thereof as required by law and this shall be your warrant for same.

"Given under my hand as the clerk of Whitley County Court at office in the town of Williamsburg, this 25th day of February, 1851, and 59th year of the Commonwealth.

"A. WILLIAMS."
"Whitley County Sct.
"February 28th, 1851.

"Surveyed by W. C. Gillis two thousand acres of land by virtue of part of Whitley County Court Land Warrant, No. 464, assignee of Cox, Williams and McLancy, situated on Bunches and Dodslaughter creeks and bounded as follows, to-wit: (Here follows boundary), platting out 200 acres patented to James Jones in said boundary.

"W. C. GILLIS, S. W. C."

To determine whether a patent might lawfully issue upon these papers, and whether they showed any title in Gillis to the land, it is necessary for us to consider the statutes in force at the time, and under which they were made. The act of February 21, 1837, among other things, provides:

"1. That hereafter it shall be the duty of the county court in each county, to appoint a county treasurer, and take from him bond and good security, in such penalty as the court shall deem right, conditioned well and truly to account for and pay all moneys which shall come to his hands, as treasurer, to the order of the court, from

time to time, as required; and they shall require him to renew his bond as often as they deem proper, and may remove him, and appoint another, at any time.

"2. That it shall be the duty of the courts aforesaid, by an order on their records, to affix the price of the vacant lands in their respective counties; which price shall be the same for all the lands in the county, and shall not be below five cents an acre.

"3. That any person or persons, wishing to purchase any of the vacant lands, shall apply to the county treasurer, and pay to him the price of so much land as he may desire to purchase, and take a receipt for the same, and carry the receipt to the county court clerk, who shall record the receipt, and file the original, and issue a warrant for the quantity of land, stating therein the amount paid therefor to the county treasurer, and shall also record the warrant; and, on the production of the warrant to the surveyor of the county he shall proceed and survey the same, and do all and every act which he was required to do in case the treasury warrants, before the passage of the act to which this is an amendment, and, on the return of the plat and certificate of survey to the Register, he shall register the same, and a grant shall issue, in all respects as grants were required to be issued before the passage of said act."

It will be observed that under this act persons wishing to purchase any vacant lands were required to pay the county treasurer for the land and take a receipt for the price. The statute did not authorize the land to be taken upon credit; it required the price to be paid before a warrant was issued. But under the statute the Whitley County Court allowed persons to execute bonds in place of paying money, and to prevent some of the evils growing out of this practice, the Legislature passed an act approved March 5, 1850, which provides as follows:

"That the order of the Whitley County Court, authorizing the treasurer of said county to receive bonds in place of money for the sale of vacant lands in said county, be legalized; and the county court shall have the same power to appropriate said bonds, or their proceeds, to road purposes, as they would the money if it had been paid; and the holders of any such bonds, by order of said court, shall have power to enforce payment by due course of law before any tribunal having jurisdiction of the same.

"2. That it shall not be lawful, hereafter, for the Register of the Land Office to receive and register any plat and certificate of survey made by the surveyor of Whitley county, upon county warrants without the certificate of the treasurer of said county accompanying the same, that the land has been paid for in money or labor, according to the order of said court."

This act was passed nearly a year before the Gillis survey was made, or the warrant issued upon which it was based. It legalized what the county had done up to that time, but to prevent patents from issuing on surveys based on promises to pay, it was provided that no plot or certificate of survey should be received or registered without the certificate of the treasurer of the county that the land had been paid for in money or labor. This left the holders of the warrants which had been issued in violation of law an indefinite time to pay the price and register the survey. To remedy this the Legislature the next year by the act approved March 8, 1851, provided as follows:

"Whereas, it is represented to the General Assembly, that the Whitley County Court sold land warrants to divers citizens of said county, and took bonds for the same, to be discharged in labor on the public roads, said warrants having been located on vacant lands therein and that said county court has never demanded payment of said bonds; and whereas, a law has been passed prohibiting the register of the land office from receiving any plot and certificate of survey made on said warrants, except it be certified by the treasurer of the county that the warrant had been paid for. Therefore,

"Be it enacted by the General Assembly of the Commonwealth of Kentucky, That the citizens of Whitley County have until the first day of March, 1852, to return plats and certificates of said surveys to the register of the land office, together with a certificate from the treasurer of said county that said warrants had been paid for."

The plain purpose of this act was to require all these matters to be closed up by March 1, 1852; that is, the parties who had made these surveys were given a year to pay the price and take out their grants. The necessary meaning of the statute is that they were required to pay the price and register their surveys within the time specified and that they could not do so thereafter. The

Gillis survey was made on February 28, 1851, or eight days before the passage of this act. Gillis had under the act until March 1, 1852, to return the plat and certificate of survey to the Register of the Land Office with a certificate of the treasurer of the county that the warrants had been paid for. When he did not do this, he lost all his rights under the warrant or survey. If it should be held that the statute is not mandatory, and that these surveys could be carried into grant by a compliance with the statute after the time fixed in it, then it would be meaningless, and the purpose of its enactment would be defeated. The rule is that under statutes conferring privileges on private individuals for a certain period of time, the privilege can not be exercised after the time allowed. (36 Cyc., 1160; Black on Interpretation of Laws, 359, 26 Am. & Eng. Ency. of Law, 691, and cases cited.)

It is insisted that the receipt of the treasurer is for a bond for $1,000, and that we can not say now what sort of a bond this was; but when the receipt is read in the light of the legislative acts above referred to, there is no question what it means. It refers to one of the bonds which the Whitley County Court by its orders allowed taken. The county treasurer was not authorized by the act of 1837 to take anything but money, and he does not receipt for money. He did not take the bond as money; he receipted for what he got, a bond. His receipt does not show that anything was paid and there is nothing in the record to indicate that anything has ever been paid on this land from that time to this.

It is also insisted that the patent can not be assailed in this suit. When application was made for this patent in 1905, Mrs. Bryant sought to enjoin the Auditor from issuing it. A judgment dismissing her petition was affirmed by this court. The court said:

"If it should be conceded that the 2,000 acre patent is void, upon the ground that the land office was without jurisdiction to issue the patent, that fact may be shown collaterally in the civil suit pending in Whitley."

A number of authorities are cited in that opinion sustaining the conclusion that where there is an entire want of authority in the land office to issue a patent, a patent issued without authority is void. (Also see Morris v. U. S., 174 U. S., 43; Davis v. Car, 175 U. S., 113.)

The act of March 3, 1850, provided that no plat or certificate of survey should be registered unless it was accompanied by the certificate of the treasurer of the county that the land had been paid for in money or labor. The plot and certificate of survey in this case were not accompanied by such a certificate; nothing was filed before the Auditor but the papers we have quoted. The act of March 8, 1851, gave the citizens of Whitley County until March 1, 1852, to return the plot and certificates together with the certificate of the treasurer of the county that the land had been paid for. No effort was made to comply with the statute; nothing was returned to the land office until the year 1905, and then only the papers we have quoted above. These did not warrant the Auditor in issuing the patent. The patent on its face purports to be based upon these papers. As the patent is based upon them, and this is shown on its face, they may be read with the patent to show its invalidity. As Gillis could not after March 1, 1852, under the statute, carry his survey into grant, his rights under the survey were lost, and the land was vacant land and subject to be taken up in 1854, when it was surveyed by Hudson and Wait.

Judgment reversed and cause remanded, with directions to the circuit court to dismiss the petition.