## Ford, et al. v. Bryant.

(Decided March 18, 1914.)

### Appeal from Laurel Circuit Court.

1. Patents—Exclusions—Evidence.—Where in an action by plaintiff to recover of defendants the value of timber cut from land claimed by her under a 10,000-acre patent, from which certain surveys were excluded, evidence examined and held to sustain the finding of the chancellor that the land in controversy was not embraced in any of the exclusions referred to.

2. Patents—Survey—Failure to Perfect.—Where an applicant for a patent fails, for more than forty years, to perfect a survey and carry it into grant, it will be regarded as an abandoned survey.

3. Patents—Exclusions—Valid Surveys.—Where a patent contains the provision, "plotting out of this survey all lands heretofore surveyed," this expression applies only to valid surveys, and does not include surveys which were never perfected in the manner required by statute.

SAM C. HARDIN for appellants.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Roberta S. Bryant, brought this action against defendants, R. C. Ford and others, to recover the value of certain timber which she alleged defendants had cut from her land. On final hearing there was a judgment in her favor for $1,070.80. Defendants appeal.

Plaintiff claims title to the land in controversy under the Hudson and Wait 10,000-acre patent No. 24081, issued October 18, 1855, and based on a survey dated September 4, 1854.

Defendants claim title through the following patents:

(1) Burrell Hubbard 200-acre patent surveyed October 20, 1881.

(2) Pleasant Brewer 100-acre patent dated October 20, 1881.

(3) Aaron Clark 200-acre patent surveyed March 22, 1882.

(4) Noah Hubbard 200-acre patent surveyed March 22, 1882.

While the above patents call for 700 acres of land, it is admitted that they cover land included in the Elizabeth Whitman 100-acre survey made in 1842. Excluding this survey, there are only 538-9/10 acres left.

Prior to the hearing the parties agreed as follows:

(1) That the case be transferred to equity and tried by the court.

(2) That plaintiff had title to the Hudson and Wait 10,000-acre patent, and that the land in controversy was within the exterior lines of that patent.

(3) That the timber taken was of the value of $2.00 an acre, and that plaintiff was entitled to recover for each acre in the Hudson and Wait patent not covered by any exclusion.

(4) That the county surveyor locate the land in dispute, and also locate such parts thereof as may have been surveyed or patented previously to the Hudson and Wait patent. The parties were also given the privilege of making such private surveys as they desired.

The county surveyor filed his report, stating that there were 538-9/10 acres of land from which the timber had been cut, and which were not covered by any survey or patent older than plaintiff's patent.

After this report was filed, the parties stipulated as follows:

(1) Plaintiff disclaimed title to all lands mentioned in her patent except the 538-9/10 acres shown in the surveyor's report.

(2) The defendants conceded that they cut the timber from the entire 538-9/10 acres, and proof of the extent of their cutting was waived.

(3) Plaintiff conceded that within the 538-9/10 acres was a tract of 87-8/10 acres covered by the 640-acre Salt Well survey made in the name of James Rogers in the year 1814.

On this appeal two questions are presented:

(1) Is the evidence of plaintiff sufficient to show that the land in controversy is not embraced in any of

the exclusions referred to in the Hudson and Wait patent?

(2)    Is the James Rogers 640-acre Salt Well survey one of the exclusions mentioned in the Hudson and Wait patent?

1.    On the first question L. E. Bryant testified that he was a practical surveyor of 20 years experience. He had spent several years locating the Hudson and Wait patent, and the exclusions therefrom. He made a thorough examination of the county court records and surveyors' records in five of the mountain counties of Kentucky, to-wit: Wayne, Whitley, Pulaski, Laurel and Knox. He also made a thorough search of the records of the land office at Frankfort, going over them page by page. From the investigation that he had made he was able to state that there was no survey on record covering the land in controversy except the 10,000-acre Hudson and Wait survey, and the James Rogers 640-acre Salt Well survey, made in the year 1814. Mr. Mory, a former county surveyor for Laurel County, testified that he made two exhaustive surveys of the land in controversy, and of all the surrounding land, one in 1906 and the other in 1912. He was unable to find any survey covering the land in controversy other than the Hudson and Wait survey and the James Rogers Salt Well survey. Mr. Stacy, the present county surveyor, who was ordered by the court to go upon the land and survey it, testified to the same effect. The defendants were present by agent during the making of this survey, and did not attempt to point out any other patented survey covering the land in dispute. In the recent case of Steele v. Bryant, 132 Ky., 569, where the evidence was substantially the same, the court said:

"In cases of this sort the plaintiff ought not to be required to do a thing that is impossible. He ought only to be required to furnish such proof as is practicable; and, if his proof reasonably establishes that the land is within his patent, and not within any prior grant, the burden shifts. The defendant may show that the prior grant includes the land, although he does not connect himself with it. In this case the defendant offered no evidence. There is no evidence here that any of the older grants covered any part of the land in dispute, and we do not see that the finding of the jury for the plaintiffs is against the evidence or not warranted by it."

Under the rule above laid down there can be no doubt that the evidence in this case is sufficient to sustain the finding of the chancellor.

2. After describing the patented land, the Hudson and Wait patent contains the following provision:

"Plotting out of this survey all lands heretofore surveyed."

Defendants insist that the above language necessarily embraces all lands theretofore surveyed, and that the James Rogers Salt Well survey of 1814 must be regarded as one of the exclusions. The survey in question was made in the year 1814, after the passage of the Act to Encourage the Manufacture of Salt in this Commonwealth, approved February 2, 1813, to be found in Acts, 1812-13, pages 54-5. The act provides that if any person be desirous of locating salt works upon any vacant land belonging to the Commonwealth, he may acquire title by proceeding in a certain way. The survey in question was never carried into grant, nor did the applicant ever take the steps necessary to secure a patent. When the Hudson and Wait survey was made, more than forty years had elapsed since the Salt Well survey was made. No steps having been taken to perfect the Salt Well survey within that time, it must be regarded as an abandoned survey. In the case of Stansberry's Heirs v. Pope, &c., 6 J. J. Mar., 189, appellees claimed under a patent excluding "prior claims." The question was whether or not the words "prior claims" included invalid claims. The court said:

"It is contended, as the claim of the appellants was surveyed before the date of the entry set up by the appellees, that the call to exclude 'prior claims' must be taken as excluding the land claimed by the appellants from appropriation under the entry. This idea is plausible, but we think, when examined, is not sound. The prior claims' intended, could not mean surveys, for these constitute no appropriation of land, unless authorized and sustained by a valid entry. The expression must be construed to embrace every species of claim, no matter how vague, and no matter whether it be surveyed or not, or it must embrace such claims only, as were legal and valid. We suppose the locator meant and intended such claims as were valid in law, and only such, for to these alone was he bound to yield. All the land not covered by valid claims, was strictly speaking vacant; and there is nothing in Larue's entry, indicating

an intention to exclude vacant land. According to this interpretation, the claim of the appellants was not excluded by the entry of the appellees."

In the recent case of Bryant v. Ky. Lumber Co., 144 Ky., 755, it appeared that one W. C. Gillis, on February 28, 1851, surveyed 2,000 acres of land, and copied the survey on the surveyor's books of Whitley County. He did not comply with the law then in force, and no patent was ever issued. This survey was transferred a number of times. In the year 1907 the Kentucky Land Office issued a patent therefor. In a contest between the patentees and the plaintiff in this action, claiming under the Hudson and Wait survey of 1854, it was held that as Gillis did not comply with the statute and carry his survey into grant his rights under the survey were lost, and the land embraced therein was therefore vacant land and subject to appropriation in the year 1854 when it was surveyed by Hudson and Wait. In view of the above authorities, we conclude that the expression "plotting out of this survey all lands heretofore surveyed," contained in the Hudson and Wait survey, applies only to valid surveys, and does not include surveys which were never perfected in the manner required by the statute.

Judgment affirmed.