## Stephens v. Terry, et al.

(Decided November 30, 1917.)

### Appeal from Whitley Circuit Court.

1. Boundaries—Patents—Evidence.—The plaintiff, in an action for the recovery of land, who claims under a patent, which excludes or excepts certain lands within its exterior boundaries, must substantially prove, that the lands sued for are within the exterior boundaries, and without the exceptions or exclusions.

2. Boundaries—Burden of Proof.—A plaintiff, who admits that the lands he sues for are within the exterior boundaries of a patent, the lands in which are owned by his adversary, but claims, that the lands sued for are within the lands excepted from the boundary described in the patent, must assume the burden of proof, when his title is denied.

3. Public Lands—Previous Entry and Survey.—The previous entry or survey, which will render void a subsequent patent, to the extent of the interferences, under section 4704, Kentucky Statutes, is a subsisting legal entry or survey.

4. Public Lands—Patents—Title.—A patent, which describes the exterior lines with such certainty, that they can, with reasonable diligence, be located, is not void for uncertainty, because of the uncertain description of previously patented lands, surveys or entries, which are excepted or excluded from the patent, but passes

the title to all vacant and unappropriated lands in the boundary described by the patent.

5. **Public Lands—Entry—Validity.—**An entry, to be valid, and one which can be enforced against a subsequent locator, must give the situation of the land it calls for, with such certainty and definiteness, that other persons, desiring to make entries on adjacent premises, may, with reasonable diligence, be able to find it, and if an entry has not such certainty, it can not be maintained.

6. **Public Lands—Exception in Deed—Description.—**If an exception in a deed or grant is not described with certainty, the grantee has the benefit of it, and if the description of the exception is void for uncertainty, the whole tract passes to the grantee, the exception, alone, being void.

7. **Public Lands—Exception in Deed—Description.—**If a description of an exception, in a deed or grant, is, that it is a certain quantity out of a larger grant, the grantor may cure the uncertainty by a selection of the excepted quantity, within a reasonable time.

8. **Public Lands—Entry.—**An entry not authorized by law is void, and can not thereafter be surveyed and carried into grant.

9. **Public Lands—Void Patent.—**A patent, to grant which, the registrar was entirely without authority, is void, and may be collaterally attacked.

STEPHEN & STEELY for appellant.

HENRY C. GILLIS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This action was instituted by the appellant, H. T. Stephens, against one Absalom Bryant, and in the petition the appellant claimed the ownership of a tract of one hundred and fifty acres of land, in Whitley county, and sought an injunction against Bryant to restrain him from committing trespasses upon the land. Before judgment was rendered in the case, the appellees, James E. Terry, et al., filed an intervening petition, in which they denied that appellant was the owner of the land and asserted title in themselves, and asked that they be made defendants, and the answer be made a counter-claim against the appellant, asserting that the appellant was claiming to be the owner of the land adversely to them, but that his claim of ownership was invalid, but put a cloud upon their title, and asked that their title be quieted. By an order of the court, the appellees were made defendants, and their petition filed and considered as their answer to the petition, and a counter-claim. The appellant then filed an amended petition, in which he set up claim of ownership to four tracts of land, in addition

to the one claimed in the original petition, and averred that the appellees' claim of ownership, to each of the four tracts, was based upon the same title, under which they claimed ownership of the tract described in the petition; that appellees' claim to ownership to all the tracts was based upon a patent issued to one Alfred L. Clapp; that his title, however, was superior to the title derived from the Clapp patent by appellees, and that their claim to ownership beclouded his title to each of the tracts, and prayed that his title be quieted.

The appellant and appellees then entered into a written agreement, of record, by the terms of which it was stipulated, that the court should determine the question of the ownership of the lands between them, regardless of the question as to whether either of them held possession of the lands, and should grant such relief as would protect the rights and interest of the one, which was determined to be the owner. By the terms of the writing, it was agreed, that the appellees were the owners of the lands embraced within a patent, No. 52107, for fifty-nine thousand five hundred and twenty acres, and dated June 23rd, 1874, based upon a survey made October 10th, 1873, and by a chain of conveyances from the patentee, who was Alfred L. Clapp, and that the lands in controversy were situated within the exterior lines of such patent; "that defendants have title to said lands under said patent and conveyances, unless plaintiff has title to same superior to said title of defendants aforesaid." The writing then sets out and describes the chain of title, under which appellant claimed to be the owner of the lands, and stipulated that each party may use as evidence on the trial of the action the various orders of the county court, entries, patents, surveys and plats under which they respectively claim title.

. The patent to Alfred L. Clapp is not on file, but is fully set out in the pleadings of appellant, and he admits therein, that the patent was granted to Clapp on June 23rd, 1874, and was based upon a survey made on October 10th, 1873; that the patent embraces the lands in controversy, and the title to same, by mesne conveyances, is vested in the appellees, unless the lands in dispute are excluded from the operation of the patent by its terms, and that such is the case is the contention of the appellant.

(a) Upon the threshold of a consideration of this case, the question arises, as to whether the burden of proof, in the whole case, is upon the appellant or ap-

pellees. The appellant was the plaintiff and the appellees were defendants in the circuit court. It is well settled that when a patentee, claiming under a patent, which contains exclusions of certain lands embraced within the exterior boundaries of the patent, is a plaintiff, in an action, for the recovery or on account of trespasses upon a tract of land, and his claim to ownership of the land is denied, the burden is upon him to substantially prove, that the lands in controversy, are within the exterior boundaries of his patent, and are not embraced by any of the exclusions. Steele v. Bryant, 132 Ky. 569; Miller v. Breathitt Coal, Land & Lumber Co., 154 Ky. 390; Caddell v. Eagle Coal Co., 144 Ky. 396; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249; Tennis Coal Co. v. Sackett, 172 Ky. 741. The reason for this rule is apparent. The plaintiff's title to the lands being denied, it is incumbent upon him to show by evidence, before he is entitled to a recovery, that his claim to ownership is true, and when he produces a patent, as the evidence of his title, and proves, that, the lands are within the exterior boundary lines of the patent, he, yet, has not proven that the lands, in controversy, are embraced by the patent, and has not shown any title to the lands in himself, as they might lie within the exclusions. He must, also, necessarily prove that the lands, which he seeks to recover, are not within any of the exclusions, otherwise he fails to show, that the patent gives him any title. In the instant case, the plaintiff admits that the lands are within the exterior boundary lines of the patent under which appellees claim, but, contends, that they lie within the exclusions. By the terms of the written agreement on file, and under which the action was tried, the appellant admitted that the patent, under which appellees claim, vested them with title to the lands, unless he could show a paramount title. His title is denied by the appellees. Considering the issues made by the pleadings and agreement, and the admissions of appellant therein, it is clear that in the absence of any evidence, he would necessarily lose the decision, and under the rule provided by section 526, of the Civil Code, the burden is upon him to show his title to the lands, as every plaintiff in an action to recover, where his title is and can lawfully be denied, must recover upon the strength of his own title.

(b) The patent to Alfred L. Clapp, after describing by metes and bounds, courses and distances, the lands granted by it, contains the following language:

"Containing in the whole 59,520 acres, from which is to be deducted the lands formerly legally surveyed and the entries of Alfred Barnett and John Harmon of 1,000 acres, with its appurtenances. To have and to hold. . . . ."

The patents, under which appellant claims, were granted on May 12th, 1879, and are based upon surveys made from the 2nd to the 5th days of April, 1878. Hence, they are void and confer no title upon him, unless the lands embraced by them are within the exceptions of Barnett and Harmon's entries, and were based upon such entries, as it is provided by section 4704, Kentucky Statutes, that "None but vacant land shall be subject to appropriation under this chapter. Every entry, survey or patent made or issued under this chapter shall be void so far as it embraces lands previously entered, surveyed or patented." This provision of the statute was the one in the revised statutes, and substantially the same in the act of 1835. Kirk v. Williams, 82 Ky. 160; McMeekin's Heirs v. Hutchison, 4 Bush 160; Gooslin v. Smith, 90 Ky. 157; Davidson v. Combs, 5 R. 812; Gibson v. Board, 102 Ky. 505, and many other adjudications of this court. The previous entries or surveys, that will render void a subsequent entry, survey, or patent, to the extent of the interference, must be a subsisting legal entry or survey. Mason, Jr., v. Fuson, 171 Ky. 113; Ford, et al., v. Bryant, 158 Ky. 97; Bryant v. Kentucky Lumber Co., 144 Ky. 755; Stansberry's Heirs v. Pope, 6 J. J. M. 189; Collinsworth v. Bevins, 125 S. W. 1060. Hence, in order to show that he has title to the lands embraced within the patents, under which he claims, they being subsequent to the Clapp patent, and the surveys upon which they are based being subsequent to the Clapp patent, he must show that they are embraced within the Harmon and Barnett entries, and that such entries were valid and subsisting legal entries, at the time, of the granting of the Clapp patent.

As regards the Clapp patent, the description of the exterior lines of it are such, that there could be no great difficulty in locating it, and it has often been held, that a patent is not void, because of the uncertainty of the description of the excepted previously granted lands, or other exclusions or exceptions from the boundaries described, but passes the title to all vacant and unappropriated lands in the boundary described by the patent. Bryant v. Kendall, 25 R. 1859; Hall v. Martin, 89 Ky.

9; Drake v. Ramsey, Hardin 34; Overton & Reed v. Roberts, 4 Bibb 156; Uhl, etc., v. Reynolds, etc., 23 R. 759; Goffe v. Lowe, 25 R. 2176; Kidd v. Central Trust & Safety Deposit Co., 23 R. 1402.

If, however, there was no other description to be had of the Barnett and Harmon entries, except that given in the patent to Clapp, it would seem, that the exception in the patent would be void because of its uncertainty. The description there given is:

"The entries of Alfred Barnett and John Harmon of 1,000 acres and its appurtenances."

This description would not indicate what part of the fifty-nine thousand, five hundred and twenty acres of land was covered by the entries. It would apply to one part as well as another of the lands embraced in the patent. Applying to this situation the maxim, that is certain, which can be made certain, a look at the entries may be had for the purpose of making the exception in the patent certain and enforcible. The entry made by Barnett upon the entry book in the surveyor's office is as follows:

"Nov. 4, 1874.

"Entered for Alfred M. Barnett, assignee of Cox, Williams and McLancy, 1,000 acres of land on Hen's Nest Fork of Marsh Creek and other waters of said creek."

The entry made by Harmon is as follows:

"April 10, 1871.

"Entered for John H. Harmon 1,000 acres of land on the waters of Marsh Creek and Jellico Creek."

It is readily apparent, that the entries themselves do not afford any assistance and do not add anything to the certainty of the exception in the patent. There is nothing to indicate where either commences or ends. The entries would apply as well to as many different thousands of acres or to a thousand acres at one place, as well as another, except that the entry of Barnett is to be upon the Hen's Nest Fork of Marsh Creek and other waters of that creek, and that of Harmon is one thousand acres upon the waters of Marsh Creek and Jellico Creek. It would be impossible to tell whether the lands covered by these entries were upon one side of the creek or the other, or whether near the mouth of the creek or near its source, and however diligent one might be to ascertain the location of either, he would be unable to do so, and the patentee of the Clapp patent could not, in any way, determine which portion of his land the pat-

ent gave him title, and to what portion he had no title. Section 4703, Kentucky Statutes, provides that the party, who makes an entry for the purpose of appropriating vacant lands, must, by the entry, describe the lands, which he seeks to appropriate, and such has been the requirements of the statutes of this state relating to entries under treasury warrants and under the statutes providing for pre-emptions on account of improvements. It has been repeatedly held, that an entry, to be valid, and one which can be enforced against a subsequent locator, must give the situation of the land it calls for, in relation to other objects, with such certainty and definiteness, that, other persons, desiring to make entries on adjacent premises, may, with reasonable diligence, be able to find it, and if an entry has not such certainty, it is void and cannot be maintained. Tandy's Heirs v. Bledsoe, Sneed 198; Davis v. Davis, 2 Bibb 134; Hanson v. Lashbrook, 3 Bibb 543; The Register v. Hagin, 1 A. K. M. 148; McCracken v. Church, 1 A. K. M. 273; Young v. Wilson, 1 A. K. M. 609; Bush v. Jamison, 3 Bibb 118; Parker v. Stephens, 3 A. K. M. 197; Winslow v. Holder's Heirs, 3 Litt. 33; Perry v. Hogg, 2 T. B. M. 112; Estill v. Patrick, 4 T. B. M. 308; Biggerstaff v. McIlhenney's Heirs, 3 Litt. 148. Hence, it is concluded, that the entries of Barnett and Harmon were void, because of their vagueness and uncertainty, and do not make certain the exception in the Clapp patent with reference to them. It seems, that if no exception had been made in the Clapp patent with reference to them, they would not have been enforcible. These entries being void for uncertainty, at the time, they were attempted to be excepted from the lands granted by the Clapp patent, and although they were void, being excepted as they were, the question arises, as to what effect would the exception in regard to them, in the manner in which it was done, have upon the grantee's right to all the lands embraced in the patent, outside of the lands, which had theretofore been legally surveyed for patents? The general rule, which applies where a deed or grant is valid and only the exception is void for uncertainty, is stated in 8 R. C. L. 1097, as follows:

"If an exception is not described with certainty, the grantee shall have the benefit of the defect. . . . If the description is void for uncertainty, the title to the whole tract passes, the exception alone being void."

In support of the above stated doctrine the author cites Jackson v. Hudson, 3 Am. Dec. 500; Lloyd v. Oats,

143 Ala. 231; Lange v. Waters, 156 Cal. 142; Atteberry v. Blair, 244 Ill. 363.

The following exception to the above rule, however, exists. If a description of an exception is, that it is a certain quantity out of a larger tract, the grantor can cure the uncertainty, by a selection of the excepted quantity, and in such case the exception is not void, if the grantor makes the selection within a reasonable time. This principle is in accordance with the text in 13 Cyc. 679, where it is said:

"An exception should describe the property with sufficient certainty. Uncertainty or vagueness of description renders a reservation void, unless there is something in the exception, deed or evidence, whereby it can be made sufficiently certain. Uncertainty of location can, however, in a proper case, be cured by the grantor's election within a reasonable time, followed by acts *in pais.*"

The exception in the Clapp patent does not clearly indicate whether the entries there excepted, meant a joint entry in the names of Barnett and Harmon of one thousand acres, or a separate entry for each of them of one thousand acres, but construing the exception as meaning the exception of two entries, one for each of them, the patent having attempted to except the entries ordinarily the grantor could have made the description of the exception certain by thereafter, within a reasonable time, making an election of the particular portion of the land to which the exception should apply. If Barnett and Harmon or their assignees had, within a reasonable time, caused these entries to be surveyed and application made for grants, the uncertainty would have been cured, always, however, provided, that the entries were valid and such as could thereafter have been legally surveyed and carried into grant. An entry is a description of the land entered for a survey for a patent, made in the office of the county surveyor by one having authority, by virtue of a warrant or order of the county court, authorizing him to appropriate a certain quantity of vacant lands of the county, and the exception in the patent to the entries of Barnett and Harmon could not be made certain, by election, by a stranger to the entry, but only by Barnett and Harmon, or such person as had a right to claim under the entries excepted in the patent. If the entry was one not authorized by law, the entries were void for that reason and could not be surveyed and carried into grant, thereafter.

Five separate tracts of land are claimed by appellant, and it does not appear, whether, they adjoin each other or not. He claims in his pleadings and evidence that all five of the surveys, upon which the patents, under which he claims, were based, were made by virtue of a warrant, No. 464, which was issued by the clerk of the Whitley county court on the 25th day of February, 1851, and is as follows:

"No. 464. Commonwealth of Kentucky, to the Surveyor of Whitley County, Greeting:

"You are hereby authorized and directed, by yourself or deputy, to survey in one or more surveys for Enoch Cox, James C. Williams and Jacob McLancy 40,000 acres of vacant land in your county, they having produced to me, the county treasurer, receipt for a bond for one thousand dollars, the price thereof, as required by law, and this shall be your warrant for same.

"Given under my hand as clerk of Whitley County Court, at office, in the town of Williamsburg, this 25th day of February, 1851, and fifty-ninth year of the Commonwealth. "A. WILLIAMS."

The treasurer's receipt is as follows:

"No. 464. Received of Enoch Cox, James C. Williams and Jacob McLancy a bond for $1,000.00 for 40,000 acres of vacant land in Whitley county, and the clerk of the Whitley county court is hereby authorized to issue a warrant for the same, this 25th day of February, 1851.

"JAMES C. WILLIAMS, C. T."

By virtue of the above warrant, the following entry was made upon the entry book of the surveyor of Whitley county:

"Feb. 25th, 1851. Enoch Cox, James C. Williams and Jacob McLancy enters forty thousand acres of land by virtue of Whitley county court land warrant No. 464, situated in Whitley county, to embrace any and all vacant and unappropriated land in said county, not occupied by warrants previously entered."

It would seem, that this entry entirely exhausted the warrant, No. 464, as there were no other lands in the county, which could be entered by virtue of it, and that when this entry was made the warrant had entirely performed its office. No further step appears to have been taken under this warrant or the entry made under it, until April 10th, 1871, when the entry was made by Harmon, heretofore quoted, and on November 4th, 1874, the entry was made by Barnett, which has been heretofore

quoted. Claiming under the warrant, No. 464, on April 3rd, 1878, one Elisha L. Stephens caused one hundred and fifty acres of land on Indian creek to be surveyed and the certificate of survey recites, that it was made by Stephens, as assignee of Alfred M. Barnett, who was the assignee of Cox, Williams and McLancy, and by virtue of warrant No. 464. Thereafter a patent was issued to Elisha L. Stephens for this land, reciting that it was surveyed on April 3rd, 1878, and describing Stephens as the assignee of Alfred M. Barnett, and this is one of the tracts claimed by appellant in this action and under this patent.

On April 3rd, 1878, Elisha L. Stephens caused a survey to be made of fifty acres of land upon Marsh creek, and the certificate describes him as assignee of John H. Harmon, who was assignee of Cox, Williams and Mc-Lancy, and that the survey was made by virtue of warrant No. 464. This tract was patented to Elisha L. Stephens on May 12th, 1879.

Elisha L. Stephens, also, procured a warrant, No. 1109, from the Whitley county court, on March 18th, 1878, authorizing him to appropriate two hundred acres of vacant land and caused the above two mentioned tracts of land to be surveyed by virtue of that warrant, but never carried the surveys into grant, as based upon that warrant and the survey made thereunder.

On April 5th, 1878, the appellant caused a survey to be made of twenty-five acres of land and the certificate describes him as the assignee of John H. Harmon, who was assignee of Cox, Williams and McLancy, and that the survey was made by virtue of warrant No. 464. A patent was issued to appellant for this land on May 12th, 1879, and describes the land as situated upon the Lick branch of Marsh creek. He, also, procured a warrant, No. 1111, in his name, from the Whitley county court, which authorized him to appropriate two hundred acres of land, and caused the above tract to be surveyed by virtue of that warrant, but never carried the survey into grant.

He, also, caused one hundred and seventy-five acres of land, on Marsh creek, to be surveyed on April 3rd, 1878, by virtue of warrant No. 464, and the certificate describes him as assignee of John H. Harmon, who was assignee of Cox, Williams and McLancy. A patent was issued for the above tract to William Caudell, as assignee of appellant, on May 12th, 1879. Appellant, also, caused this tract to be surveyed by virtue of warrant No. 1111.

On April 2nd, 1878, Martin L. Stephens caused a survey to be made of two hundred acres of land on Marsh creek. The certificate described him as assignee of John H. Harmon, assignee of Cox, Williams and McLancy, and certified that the survey was made by virtue of warrant No. 464. A patent was granted to Martin L. Stephens, as assignee of John H. Harmon, for this tract of land on May 12th, 1879. Martin L. Stephens, also, procured a warrant, No. 1110, from the Whitley county court on March 18th, 1878, and caused a survey to be made of the above tract of land by virtue of that warrant, but never carried this survey into grant.

Elisha L. Stephens, Martin L. Stephens, and Willam Caudell conveyed the lands patented to them to appellant, and these, with the twenty-five-acre tract patented to him, are the ones claimed by him in this action.

The appellant claims that he was transferee of the entry of Barnett and Harmon, but he does not produce any written evidence of such fact, and claims that Barnett and Harmon were assignees of Cox, Williams and McLancy, and that Martin L. Stephens and Elisha L. Stephens acted under his authority, by some kind of an arrangement between him and them, in making the surveys, which they claimed to have made as assignees of Barnett and Harmon, respectively, but there is nothing to show these claims, except the statement of appellant, and no writings ever seem to have been in existence as evidence of these facts, if they were facts, but as it appears that a copy of warrant No. 464, and the certificates of surveys, upon which the patents were based, represented that they were made by virtue of warrant No. 464, and, further, as assignees of Barnett and Harmon, respectively, who were assignees of Cox, Williams and McLancy, and upon these certificates of surveys and a copy of warrant the patents were granted; the fact of the alleged assignments by Cox, Williams and McLancy to Barnett and Harmon, and their assignment to appellant, and his arrangement with Martin and Elisha L. Stephens to have surveys made in their names for him, will be treated as facts satisfactorily proven, for the purposes of this decision.

It will be observed that the county court warrant, No. 464, of February 25th, 1851, and issued to Cox, Williams and McLancy, was not issued upon the payment for forty thousand acres of vacant and unappropriated lands, in money, or the payment of any sum, but the warrant and the receipt of the treasurer of the county show, that

instead of a payment with money for the lands, a bond
had been executed for the price of the lands. The record
does not disclose what sum, per acre, had been fixed by
the county court as the price of vacant and unappropri-
ated lands, but it is presumed, that it was not less than
five cents, per acre, as the statute fixed that sum as the
minimum price. It does not appear that this bond or
any part of it was ever paid, although there is a certifi-
cate of the treasurer upon the certificates of surveys
made for Elisha L. and Martin L. Stephens, that the
lands embraced in those certificates had been paid for,
and this certificate of the treasurer bears date after the
surveys were made. The statute enacted by the General
Assembly on the 21st day of February, 1837, relating to
the appropriation of vacant lands was then in force,
and by subsection 2 of that act, the county court was re-
quired to fix a price for the vacant and unappropriated
lands in the county of not less than five cents, per acre.
Subsection 3, of the act of 1837, is as follows:

"3.   That any person or persons wishing to purchase
any of the vacant lands shall apply to the county treas-
urer, and pay to him the price of so much land as he may
desire to purchase, and take receipt for the same and
carry the receipt to the county court clerk, who shall
record the receipt and file the original and execute a
warrant for the quantity of land, stating therein the
amount paid therefor, to the county treasurer, and shall,
also, record the warrant; and on the production of the
warrant to the surveyor of the county, he shall proceed
and survey the same and do all and every act, which he
was required to do as in the case of treasury warrants,
before the passage of the act, to which this is an amend-
ment, and on the return of the plat and certificate of
survey to the register, he shall register the same and a
grant shall issue in all respects as grants were required
to be issued before the passage of said act."

Under this statute, vacant lands were not authorized
to be appropriated upon the execution of bonds for the
price, but a payment for the land was required to be
made, in money, before a warrant could be issued. It
seems that the Whitley county court had been granting
land warrants under an order of that court, which per-
mitted such warrants to be issued upon the execution of
a bond for the payment of the price of the land, but the
bonds had never been paid, and on March 5th, 1851, in
an endeavor to correct this practice, the legislature en-
acted a statute, which made the granting of land war-

rants upon the execution of bonds, in accordance with the order of the Whitley county court, legal, and made the bonds enforcible, but provided that the register of the land office should not receive nor register any plat and certificate of a survey made upon a warrant, which had been procured by the execution of a bond, unless the certificate of the treasurer accompanied the certificate, to the effect that the land had been paid for with money or with labor, in accordance with the order of the court.

Thereafter, on March 8th, 1851, the legislature, by an act of that date, provided, that as warrants had been issued and lands entered and surveyed, in Whitley county, by virtue of these warrants, which had been issued upon the execution of bonds for the price of the land, payable in labor, and that the bonds had not been paid, the holders of such surveys should have until the first day of March, 1852, to return plats and certificates of surveys made by virtue of such warrants, to the register of the land office, with a certificate of the treasurer, that the warrant had been paid for.

A copy of the bond executed by Cox, Williams and McLancy is not on file, but it can only be concluded, that it was one executed in accordance with the order of the county court and described in the acts of the legislature with reference to them, above quoted. The provisions of the act of March 8th, 1851, do not mention mere entries or the disposition of warrants, which had been issued upon the execution of bonds, and where no entries were ever made, but, as it renders invalid a survey, made by virtue of such a warrant, which had not been filed with the registrar and the land paid for before the first day of March, 1852, it would seem that an entry made under such a warrant and not carried into grant before the first day of March, 1852, and the land paid for, would, also, be invalid, as well as such a warrant, which was not entered, survey made and returned to the register before that date. The purpose of the act was to make an end of the practice of issuing warrants, where the land authorized to be appropriated was not paid for. Furthermore, it is apparent, that the holder of such a warrant could not make an entry by virtue of it, or a survey under it, after the first day of March, 1852. This court, in Bryant v. Kentucky Lumber Co., 144 Ky. 755, in commenting upon a survey made under a warrant not paid for, in money, but issued by the Whitley county court upon the execution of a bond for the price of the land, in accordance with the order of that court, and the effect of the

above mentioned legislation, especially the act of March 8th, 1851, said:

"The plain purpose of this act was to require all these matters to be closed up by March 1st, 1852; that is, the parties, who had made these surveys, were given a year to pay the price and take out their grants. The necessary meaning of the statute is, that they were required to pay the price and register their surveys within the time specified, and that they could not do so thereafter. The Gillis survey was made on February 28th, 1851, and eight days before the passage of this act. Gillis had, under the act, until March 1st, 1852, to return the plat and certificate of survey to the register of the land office, with the certificate of the treasurer of the county, that the warrants had been paid for. When he did not do this he lost all his rights under the warrant and survey. If it should be held that the statute is not mandatory, and that these surveys could be carried into grant by a compliance with the statute after the time fixed in it, then it would be meaningless, and the purpose of its enactment would be defeated. The rule is, that under statutes conferring privileges on private individuals for certain periods of time, the privilege cannot be exercised after the time allowed."

Cox, Williams and McLancy had until March 1st, 1852, to survey the entry made under the warrant, No. 464, pay for the lands and file their survey with the register, but they did nothing of the kind. Doubtless, they recognized that their warrant and entry were both invalid after March 1st, 1852, as they took no other steps in regard to them. Twenty years thereafter, and when the bond had become barred by limitations, and no compliance had been made with the act of March, 1851, they had nothing, which they could assign to Barnett or Harmon. Hence, the entries made by Barnett and Harmon, by virtue of warrant No. 464, were void, as well as the warrant, which was relied upon as their authority for so doing, and the entries did not amount to an appropriation of any lands, and did not authorize the granting of a patent to them or to their assignees, by virtue of warrant No. 464.

The surveys made in 1878, by virtue of warrants Nos. 1109, 1110, and 1111, which were issued to Elisha L. Stephens, Martin L. Stephens, and Henry T. Stephens, respectively, were made after the granting of the Clapp patent, and which, as we have heretofore shown, embraced all the lands, which had not been formerly legally

surveyed, and hence the surveys made in 1878, under the above mentioned warrants, were void, as having been made of lands, which had theretofore been surveyed and patented. Section 4704, Kentucky Statutes. These warrants, nor the surveys under them, are not in pretense of having been made by virtue of entries made by Harmon or Barnett, which, as heretofore shown, were void, nor any attempt to make them certain so as to support the exception in the patent.

A patent, to grant which, the register was entirely without authority, is void, and may be collaterally attacked. Commonwealth, For Use, v. James, Auditor, 138 Ky. 475; Bryant v. Kentucky Lumber Co., 144 Ky. 755. The statute requires that the plat and certificate of survey and the order of the county court, or warrant, by virtue of which the survey was made, should be filed with the register of the land office, now the auditor, and this constitutes the authority for the granting of a patent. The warrant No. 464, and the plats and certificates of surveys made in the names of Elisha L. Stephens, Martin L. Stephens, and Henry T. Stephens, show that they were made by authority of that warrant, were necessarily the papers filed with the auditor and upon which the patents, under which appellant claims, were granted. These papers would not give any authority for the granting of a patent, and hence, the register was without authority to grant them. Therefore, the appellant having failed to manifest any title to the lands sued for, the judgment is affirmed.

The whole court sitting.