## Stoffler, Trustee, et al. v. Edgewater Coal Company.

(Decided February 13, 1923.)

### Appeal from Pike Circuit Court.

1. Quieting Title—Title of Plaintiff—Proof.—In an action to quiet title, it is only necessary for plaintiff to prove title to the common source.
2. Public Lands—Grants—Void Patents—Validity of Subsequent Patents.—Land embraced in a void patent cannot again be patented as vacant or unappropriated land, and a subsequent patent is void.
3. Mines and Minerals—Owner of Surface Cannot Acquire Right to Minerals by Adverse Possession.—Where there is a severance of the mineral estate from the surface estate, the owner of the min-

rals does not lose his right or his possession by any length of non-user, nor can the owner of the surface acquire title to the minerals by his exclusive and continued occupancy of the surface only.

STRATTON & STEPHENSON and JOSEPH D. HARKINS for appellants.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This appeal is from a judgment quieting appellee's title to the mineral in a tract of 120 acres of land in Pike county.

Pleasant Bartley was the owner of a large tract of land on the Ash Camp branch of Elkhorn creek in Pike county, to which he derived title through a patent issued to N. C. Morse and others on October 10, 1866.

On February 10, 1887, Pleasant Bartley executed to E. B. Moon a title bond by which, in consideration of certain payments to be made, he sold and agreed to convey to Moon "all the coal, mineral, oil and gas in and on all those tracts of land, lying on Elkhorn creek and Gum branch, Pike county, Ky., and adjoining Alexander Ratliffe, Roll Bartley and others, and containing four hundred and forty acres, more or less."

On September 27, 1888, Pleasant Bartley and wife conveyed to M. J. Bartley a tract of land containing about 20 acres.

On February 12, 1890, Pleasant Bartley and wife and M. J. Bartley conveyed to Isaac Sanders a tract of land covering the land in controversy, but "accepting coal and mineral gas and salt water and oil held by the Moon bond."

On July 16, 1890, and after the Moon bond had been cancelled in an action brought for that purpose, Pleasant Bartley and wife conveyed the minerals in the land theretofore conveyed to Isaac Sanders, and described as containing 438 52/160 acres, to the Virginia Mining & Improvement Company, and the title thereto passed by mesne conveyances to appellee.

On December 15, 1903, there was issued to Isaac Sanders, who had theretofore purchased from the Bartleys, a patent to 120 acres covered by his deed, and Sanders' title thereafter passed to appellants.

As the evidence leaves no doubt that the Morse patent of 1866 covers the land in controversy, and that the minerals therein were excluded by the conveyance which the Bartleys made to Isaac Sanders on February 12, 1890, we need waste no time in a discussion of these questions, but will proceed immediately to a consideration of the other contentions made by appellants.

In the first place it is insisted that the Morse patent of 1866 is void because of the vague and indefinite descriptions contained in the entries, and of the further fact that some of the records of Pike county tended to show that a large number of the warrants for the land were not issued until after the surveys had been made. It must not be overlooked that if the Sanders survey of 1903 is not valid, then appellants and appellee both claim title through Pleasant Bartley, and that being true, it was not necessary for appellee to prove title beyond the common source. In Eastern Ky. Land Co. v. Ferguson, 65 S. W. 830, it was held that land which is embraced in a prior patent though void cannot again be patented as vacant or unappropriated land. In discussing the question the court said:

"Subsections 8, 11, sec. 3, c. 102, Rev. Sts., in force in 1866, provide:

" '(8)   None but vacant land shall be subject to appropriation under this chapter. Every entry, survey, or patent, made or issued under this chapter, shall be void so far as it embraces lands previously entered, surveyed or patented.'

" '(11)   No land shall be subject to appropriation under this chapter that has reverted to the Commonwealth by escheat, or has been forfeited for an omission to list same for taxation, or for failing to pay the taxes thereon, or which has been once patented, and the title of the same has in any way become again vested in the Commonwealth.' "

The same language is brought through the General Statutes, and is contained in section 4704, Kentucky Statutes. These sections have been considered by this court in the case of Kirk v. Williamson, 82 Ky. 161, in which the court said: "Whenever the Commonwealth lawfully patents the land once, it cannot for any cause patent the same land again as vacant or unappropriated land, for that would breed confusion and contention." Again, in the case of Roberts v. Davidson, 83 Ky. 284, the court said: "It may be said that the statute, *supra,*

relates only to cases where the title has in fact passed out of the Commonwealth, and not to a void patent; but, in our opinion, the state having by its officers issued the patent, and although by some defect it may be void, yet the statute precludes others from entering upon or appropriating the land without further legislation. Such entries are prohibited for the protection of those who may have obtained the patent in good faith, or who have derived title to their homes through it and an honest purchase, and while the title under these circumstances remains in the state, the land can be appropriated only by the aid of further legislation." Also, in the latter case of Goosling v. Smith, 90 Ky. 159, 13 S. W. 437, where the court said: "The language quoted precludes necessity of concurrence of entry, survey and patent by and for one party in order to render void subsequent entry, survey or patent of the same land for another, but in express terms makes the existence of either sufficient." These cases construing the statute—if, indeed, it needs construction—and the proof that the land in controversy is within the Amyx patent, preclude appellant's right to recover under the patents to Howerton & McClure, as by the statute they are void."

Stansberry's Heirs v. Pope, 6 J. J. Mar. 189, Bryant v. Ky. Lumber Co., 144 Ky. 755, 139 S. W. 1089, and Ford v. Bryant, 158 Ky. 97, 164 S. W. 308, do not announce a contrary rule. They merely hold that a previous entry or survey that will render void a subsequent entry, survey or patent must be a subsisting legal entry or survey. The reason for the difference in the rule as applied to an entry or survey and as applied to a patent is that if the entry or survey is void, the land is still vacant and unappropriated, but the statute expressly provides that land once patented, shall not be subject to appropriation under the act.

As the Sanders patent of 1903 is void, it results that appellants' only source of title is through the deed made by the Bartleys to Isaac Sanders on February 12, 1890, based on the claim that the minerals in the land in controversy were not excluded from the operation of that deed, and having held that this contention is without merit, it follows that appellants failed to show title. This conclusion makes it unnecessary to pass on the validity of the Morse patent, or to determine whether or not it is subject to collateral attack.

Of course there is no merit in the contention that appellants, and those through whom they claim, had acquired title by adverse possession. Where there is a severance of the mineral estate from the surface estate, the owner of the minerals does not lose his right or his possession by any length of non-user, nor can the owner of the surface acquire title to the minerals by his continued occupancy of the surface merely. Scott v. Laws, 185 Ky. 440, 215 S. W. 81.

On the whole we find no error in the record prejudicial to the substantial rights of appellants.

Judgment affirmed.